W. H. NEISEL, *Plaintiff in Error*, v. D. W. MORAN, AS SHERIFF OF DADE COUNTY, *Defendant in Error*.

Opinion Filed August 21, 1919.

Petition for Rehearing Granted March 25, 1920.

Opinion on Rehearing Filed June 28, 1920.

1. The State Constitution does not require that proposed amendments thereto shall contain express provisions for their submission to the electors of the State for approval or rejection.

2. Those who assert the unconstitutionality of a statute have the burden of showing that beyond all reasonable doubt the statute inevitably conflicts with some designated provision of the Constitution.

3. A statute cannot be judicially declared beyond the power of the Legislature to enact, unless some provision of the Constitution which is in conflict with it can be specifically pointed to.

4. The State Legislature has plenary law-making power subject only to the limitations imposed by the State and Federal Constitutions, and may enact any anticipatory statutes that are not forbidden by such Constitutions.

5. Conflicts between a statute and organic law do not arise until the statute becomes operative.

6. Constitutional provisions are designed to effectuate practical government regulated by law; and they should be so interpreted as to accomplish and not to defeat their purpose or to lessen their efficiency.

7. Original Article XIX of the State Constitution was superseded January 1st, 1919, by amended Article XIX, which had been adopted by the electors of the State at the General Election held November 5, 1918, to "go into effect on the first day of January, A. D. 1919;" and Original Article XIX did not forbid the enactment of the statute designated as Chapter 7736, entitled An Act to make effective the Nineteenth Article of the Constitution of this State, as amended at the General Election held November 5th, nineteen hundred and eighteen," etc., enacted at the Special Session held in November and December of 1918, and approved December 7, 1918, which statute by virtue of Section 18 of Article III of the State Constitution "specifically provided in such law," that it should "go into effect on the first day of January, A. D. 1919," the day amended Article XIX became effective as organic law.

Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Order affirmed.

*R. B. Gautier* and *Bart A. Riley,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *D. Stuart Gillis,* Assistant, for the State.

## STATEMENT.

Neisel was convicted in the Criminal Court of Record of Dade County upon an information charging in one count that on March 21, 1919, he had "in his possession, custody and control in Dade County, State of Florida, certain alcoholic and intoxicating liquors and beverages, to-wit, ninety-seven (97) quarts of whiskey," and in another count that on March 21, 1919, in Dade County, Florida, he "did then and there transport, cause to be transported and was then and there concerned in the transportation from a point in the State of Florida, to-wit, some point located on the Florida East Coast Railroad, running from Jacksonville, Florida, to Miami, Florida, certain alcoholic and intoxicating liquors and beverages, to-wit, ninety-seven (97) quarts of spirituous liquor, commonly called whiskey," etc., contrary to the statute. He sought unsuccessfully a discharge from custody by *habeas corpus* proceedings in the Circuit Court, upon the ground that the statute on which the conviction is predicated, is unconstitutional and void. The statute is Chapter 7736, approved December 7, 1918, Acts of an extra session of the Legislature convened by the Governor and held beginning November 25, 1918. A writ of error was duly allowed and taken to the order remanding the petitioner to the custody of the sheriff by virtue of the conviction above stated.

The provisions of the Constitution and of the statute to be considered are as follows:

### Amendments to the Constitution.

"Either branch of the Legislature, at a regular session thereof, may propose amendments to this Constitution;

and if the same be agreed to by three-fifths of all the members elected to each house, such proposed amendments shall be entered upon their respective journals with the yeas and nays, and published in one newspaper in each county where a newspaper is published, for three months immediately preceding the next general election of representatives, at which election the same shall be submitted to the electors of the State, for approval or rejection. If a majority of the electors voting upon the amendments at such election shall adopt the amendments the same shall become a part of the Constitution. The proposed amendments shall be so submitted as to enable the electors to vote on each amendment separately. Sec. 1, Article XVII, Constitution of 1885.

Original Article XIX of the Constitution is as follows:

### "LOCAL OPTION.

"Section 1. The board of county commissioners of each county in the State, not oftener than once in every two years, upon the application of one-fourth of the registered voters of any county, shall call and provide for an election in the county in which application is made, to decide whether the sale of intoxicating liquors, wines or beer shall be prohibited therein, the question to be determined by a majority vote of those voting at the election called under this section, which election shall be conducted in the manner prescribed by law for holding general elections; provided, that intoxicating liquors, either spirituous, vinous, or malt, shall not be sold in any election district in which a majority vote was cast against the same at the said election. Elections under this section shall be held within sixty days from the time of pre-

senting said application, but if any such election should thereby take place within sixty days of any State or National election, it shall be held within sixty days after any such State or National election.

"Section 2. The Legislature shall provide necessary laws to carry out and enforce the provisions of section one of this Article."

The Amendment to Article XIX is:

"Senate Joint Resolution No. 4.

"A Joint Resolution Proposed Amendment to the Constitution of Florida.

*"Be It Resolved by the Legislature of the State of Florida:*

"That Article XIX of the Constitution of the State of Florida, be, and the same is hereby, amended so as to read as follows:

"Article XIX, Section 1. The manufacture, sale, barter or exchange of all alcoholic or intoxicating liquors and beverages, whether spirituous, vinous or malt, are hereby forever prohibited in the State of Florida, except alcohol for medical, scientific or mechanical purposes, and wine for sacramental purposes; the sale of which alcohol and wine for the purposes aforesaid, shall be regulated by law.

"Sec. 2. The Legislature shall enact suitable laws for the enforcement of the provisions of this article.

"Sec. 3. This article shall go into effect on the first day of January, A. D. 1919.

"Approved April 18, 1917."

The above amendment to the Constitution was adopted by the electors of the State at the General Election held November 5, 1918.

### "CHAPTER 7736, ACTS OF 1918.

"An Act to Make Effective the Nineteenth Article of the Constitution of this State, as Amended at the General Election Held November Fifth, Nineteen Hundred and Eighteen, and to Prohibit the Manufacture, Sale, Barter or Exchange, the Transportation into this State, or from one Point to Another Point Within the State, and the Possession of Alcoholic or Other Intoxicating Liquors or Beverages," etc.

*"Be It Enacted by the Legislature of the State of Florida:*

"Section 1. That it shall be unlawful for any person, association of persons, or corporation, or any agent or employee of any person, association of persons or corporation, to manufacture, sell, barter or exchange, or cause to be manufactured, sold, bartered or exchanged, or in anywise to be concerned in the manufacture, sale, barter or exchange, or to transport, cause to be transported, or in anywise be concerned in the transportation, from any point in this State to any other point in this State, or to any point in this State from any point without the State whether in another State, Territory, possession of the United States, or foreign country, any alcoholic or intoxicating liquors or beverages, whether spirituous, vinous or malt, except as is hereinafter provided.

"Sec. 3. That it shall be unlawful for any person, association of persons, or corporation, or any agent or employee of any person, association of persons, or corpora-

tion, to have in his, her, their, or its, possession, custody or control, in this State, any alcoholic or intoxicating liquors or beverages, except as is hereinafter provided.

"Sec. 5. That nothing contained in this Act shall be construed to make unlawful, the manufacture, sale, barter or exchange, or to cause to be manufactured, sold, bartered or exchanged, or to be in anywise concerned in the manufacture, sale, barter or exchange, or to transport, cause to be transported, or to be in anywise concerned in the transportation, from any point in this State to any other point in this State, * * * . And nothing contained in this Act shall be construed to make it unlawful for any person over the age of twenty-one years to possess, have in custody or control, in such person's bona fide residence, for the personal use of himself, or herself, and family, and not, to be disposed of to any other person in any way, not exceeding four quarts of distilled alcoholic or intoxicating liquors or beverages and twenty quarts of malt or fermented alcoholic or intoxicating liquors or beverages, either or both, but this shall not be construed to permit any such person to possess, have in custody or control, more than the maximum quantity of the particular class of liquors here mentioned. * * * .

"Sec. 18. That, when not otherwise herein specifially provided, any person, association of persons, or corporation, and any agent or employee of any person, association of persons, or corporation, who shall violate any of the foregoing provisions of this Act herein declared to be unlawful, or to be a misdemeanor, or which imposes a duty upon any officer or any person, shall upon conviction be deemed guilty of a misdemeanor and punished by a fine not exceeding Five Hundred Dollars, or by imprisonment

in the County Jail not exceeding six months, or by both such fine and imprisonment; * * *

"Sec. 22. That, if for any reason, any Section or provision of this Act shall be adjudged unconstitutional, or otherwise inoperative, such fact shall not be held to affect any other section or provision in this Act contained, but the same shall remain in full force and effect as if the section or provision adjudged unconstitutional or inoperative had not originally been incorporated in this Act.

"Sec. 24. This Act shall go into effect the first day of January, A. D. 1919.

"Approved December 7, 1918."

WHITFIELD. J. (after stating the facts):

There is a preliminary contention that the amendment to Article XIX of the State Constitution proposed by the legislature in 1917, and adopted at the polls November 5, 1918, to "go into effect" January 1, 1919, is invalid because it was not proposed, submitted and ratified in accordance with Article XVII of the State Constitution, in that the legislature in proposing the amendment to Article XIX did not *determine upon the submission* of the amendment to the people for ratification or rejection."

The Constitution requires that proposed amendments to the Constitution by the legislature shall "be agreed to by three-fifths of all the members elected to each house," that "such proposed amendments shall be entered upon their respective journals with the yeas and nays," and that "the same shall be submitted to the electors of the State, for approval or rejection."

Whether previous proposed amendments to the Constitution have or have not in terms provided specifically for their submission to the electors of the State for approval or rejection, is immaterial here, as the Constitution does not require the proposed amendments to contain express provisions for their submission to the electors. The general election law makes provision for appropriately placing any proposed amendments to the Constitution on the official ballots to be cast at general elections; and the proper officers of the State and counties have authority and duty under the general election laws to submit duly proposed amendments to the Constitution to the electors of the State for approval or rejection. See Sec. 21, Art. IV; Sec. 1, Art. XVII, Const. 1885; Secs. 74, 79, 218, 219 as amended in 1907; Secs. 220, 230, 242, Gen. Stats. 1906, Chap. 5405, Acts of 1905; State ex rel. Adams v. Herried, 10 S. D. 109, 72 N. W. Rep, 93; Crawford v. Gilchrist, 64 Fla. 41, 59 South. Rep. 963, Ann. Cas. 1914B, 916. Amended Article XIX was legally proposed, submitted and adopted as a part of the Constitution.

In ex parte Francis, 76 Fla. 304, 79 South. Rep. 753, it was held that in providing for prohibitions of the sale of intoxicating liquors in counties by local option elections, original Article XIX of the Constitution by implication restrained the police power of the State and forbad legislation regulating the possession and the transportation of such liquors in counties where the sale thereof was unlawful. But this construction was not put upon amended Article XIX which forbids the manufacture, sale, barter or exchange of intoxicating liquors; and the statute now considered insofar as it regulates the possession of intoxicating liquors, was sustained as a valid exercise of the police power, though the validity of the statute with reference to the time of its enactment was

not then questioned. Marasso v. VanPelt, 77 Fla. 432, 81 South. Rep. 529.

It is contended that the statute is void because it *was passed* while original Article XIX was in force, though the statute did not take effect or become operative until original Article XIX had been superseded by amended Article XIX, with which amended article the statute does not conflict.

Those who assert the unconstitutionality of a statute have the burden of showing that beyond all reasonable doubt the statute inevitably conflicts with some designated provision of the Constitution. 12 C. J. 797; Peninsular Casualty Co. v. State, 68 Fla. 411; 67 South. Rep. 165; State *ex rel.* Simpson v. Ackerly, 69 Fla. 23, 67 South. Rep. 232; State *ex rel.* Clarkson v. Phillips, 70 Fla. 340, 70 South. Rep. 367; City of Jacksonville v. Bowden, 67 Fla. 181, 64 South. Rep. 769; Pinellas Park Drainage Dist. v. Kessler, 69 Fla. 558, 68 South Rep. 668; Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47; Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775; *ex parte* Pricha, 70 Fla. 265, 70 South. Rep. 406; County Com'rs of Duval County v. City of Jacksonville, 36 Fla. 196, 18 South. Rep. 339; Peninsular Industrial Ins. Co. v. State, 61 Fla. 376, 55 South. Rep. 398; Lindsley v. National Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. Rep. 337.

A statute cannot be judicially declared beyond the power of the Legislature to enact, unless some provision of the Constitution which is in conflict with it can be specifically pointed to. Cleveland v. City of Watertown, 222 N. Y. 159, 118 N. E. Rep. 500; Wooten v. State, 24 Fla. 335, text 345, 5 South. Rep. 39; 120 N. E. Rep. 19.

The Federal Constitution provides that "all legislative powers *herein granted* shall be vested in" the Congress. The State Constitution provides that "the legislative authority of this State shall be vested in" the Legislature. Differing from the Federal Constitution in this particular, the State Constitution does not *grant* particular law-making powers to the legislative body. The State Constitution merely imposes specified limitations upon the general law-making power of the State that is vested in the Legislature; and those limitations do not *forbid the passage* of statutes of the nature here considered. 120 N. E. Rep. 19.

The State Legislature has plenary law-making power subject only to the limitations imposed by the State and Federal Constitutions, and may enact any anticipatory statutes that are not forbidden by such Constitutions. The State Constitution expressly provides for the enactment of statutes to take effect after their passage and approval and after the final adjournment of the session of the Legislature at which they were enacted. Anticipatory statutes are not forbidden; nor are they contrary to the letter or to the spirit of the State Constitution; but the enactment of statutes to take effect at times subsequent to their enactment is expressly contemplated by the Constitution. Under Section 18 of Article III of the State Constitution, if this statute had not expressly provided that it should take effect on January 1, 1919, it would not have taken effect until some day in February, 1919, sixty days after the final adjournment of the session of the Legislature at which it was enacted, and until amended Article XIX had been in force more than a month.

If the Legislature had power to enact this statute after amended Article XIX *took effect* January 1, 1919, to make

the Article effective in its enforcement, as the amendment expressly provides, no reason is perceived why the same Legislature, under its general law-making power, could not legally enact the statute in December, 1918, to take effect January 1st, 1919, concurrently with amended Article XIX, which had already on November 5, 1918, been adopted at the polls to take effect inevitably on January 1, 1919. The Legislature that enacted the statute was the same body that was in commission when and after amended Article XIX became effective; and the amended Article commands the Legislature to enact suitable laws for the enforcement of the provisions of the Article as amended. The enactment merely anticipated the effectiveness of the command of amended Article XIX; and in doing so violated no provision of organic law. Statutes that do not violate the Constitution are the law of the land and should be made effective as such. Otherwise the Legislature as the law-making power would not be a coordinate department of the government.

When Chapter 7736 was passed and approved December 7, 1918, the amendment to Article XIX of the Constitution had already been adopted November 5, 1918, to take effect January 1, 1919, therefore the cases cited for plaintiff in error in which amendments to the Constitution were *adopted after* unconstitutional statutes had been passed and *made operative,* are not authority for holding that the statute here approved December 7, 1918, to take effect January 1, 1919, is void because in conflict with Article XIX before its amendment, which amendment, though adopted November 5, 1918, did not take effect till January 1, 1919. The Constitution did not *forbid the passage* of statutes of this character as it does of certain special or local laws (Sec. 20, Art. III); and the Constitution expressly provides that enactments may *be-*

*come laws* as stated therein, and that such laws may *take effect* or *become operative* at future times as specified in the laws. Secs. 18 and 28, Art. III.

The statute did not take effect and was not in force *at any time* while original Article XIX was a part of. the organic law. That is the difference between this case and others cited in argument. The validity of the statute is to be determined by the organic provisions in force at the time the statute *took effect* or *became operative*, and not at the time of *its passage;* and as the amendment to Article XIX became effective and operative concurrently with the statute, the provisions of original Article XIX do not affect the validity of the statute. The status of this statute is as though it had been enacted, approved and made effective or operative January 1, 1919, the day amended Article XIX took effect, entirely superseding original Article XIX of the Constitution. Conflicts between a statute and organic law do not arise until the statute becomes operative. Sammes v. Bennett, 32 Fla. 458, 460, 56 Fla. 107; 64 Fla. 154; 53 Fla. 647; 1 Mich. 369; 159 N. Y. 118.

As the amendment to Article XIX had been adopted by the electors of the State November 5, 1918, to take effect January 1, 1919, it was inevitable that it would be effective at that time; and as the amendment required the enactment of ''suitable laws'' for its enforcement, and as the regular session of the Legislature would not under the Constitution convene till April, 1919, it was within the law-making power of the Legislature at the extra session in December, 1918, to enact "suitable laws" to enforce the provisions of Article XIX as amended when it took effect January 1, 1919. The statute here assailed approved December 7, 1918, is a suitable law to enforce the

provisions of Article XIX as amended, and by the terms of the statute it is enacted "to make effective the Nineteenth Article of the Constitution of this State, as amended at the General Election held November fifth, nineteen hundred and eighteen," etc., and by its express provisions it did not take effect till January 1, 1919, when the amendment to Article XIX itself became effective. Its *passage* was not forbidden by organic law; and its effectiveness conforms to the requirements of Article XIX of the Constitution as amended. See Pratt v. Allen, 13 Conn. 119.

The Constitution vests the general law-making power of the State in the Legislature, and expressly authorizes the enactment of laws to take effect or to become operative at a time subsequent to their enactment and approval. Sec. 18, Art. III. See also Barbour v. State, 249 U. S. 454, 39 Sup. Ct. Rep. 316.

This is not a case where a *subsequently adopted* amendment to a Constitution is ineffectual to give validity to a previously enacted void statute which purported to take effect before the Constitution is amended and is not referred to in or validated by the amendment to the Constitution (See 12 C. J. 727); but it is a case where a constitutional amendment had been duly adopted by the electors of the State to take effect inevitably at a future fixed date, and between the adoption of the amendment to the Constitution by the electors and the date it became effective to entirely supersede the former Article XIX of the Constitution, the Legislature without violating any provision of the Constitution enacted a suitable law to enforce the provisions of the amendment to the Constitution, the laws to *take effect concurrently with the amendment to the Constitution.* See Correllis v. State,

78 Fla. 44, 82 South. Rep. 601; Morasso v. Van Pelt, 77 Fla. 432, 81 South. Rep. 529. Chapter 7736 by its express terms could not have been effective at any moment of time when original Article XIX was in force, so there could be no conflict between original Article XIX and Chapter 7736. Larrabee v. Talbot, 5 Gill (Md.) 426, 46 Am. Dec. 637; 36 Cyc. 1192; 15 L. R. A. (N. S.) 134, text 138.

In this case the amendment to Article XIX contemplated the enactment of regulations to enforce its provisions when the Article became effective, and the passage of such regulations before the organic amendment took effect, the enactment to *take effect* concurrently with the organic amendment, does not render the statute void, even though it may have been in conflict with the original Article XIX, if the statute had been *made effective or operative* before the amendment to Article XIX took effect.

In Reade v. City of Durham, 173 N. C. 668, 92 S. E. Rep. 712, the statute was sustained because it *was passed and became effective before* the constitutional amendment became operative under which amendment the statute would have been invalid. The statute took effect the day it was passed.

In Etchison Drilling Co. v. Flournoy, 131 La. 442, 59 South. Rep. 867, the amendment to the Constitution had not been adopted when the statute was passed and *it was held* that the constitution *forbad the passage* of the statute at the time it was enacted.

The recently adopted amendment to the Federal Constitution, known as Article XVIII, which is to take effect January 16th, 1920, prohibiting the manufacture, sale or transportation of intoxicating liquors in the United

States for beverage purposes, is an added and not a sub-
stituted Article; and, having been adopted by three-
fourths of the States, it may be regarded as a part of the
Federal Constitution before it becomes operative, making
the enactment of anticipatory statutes for enforcing the
Article proper, such statutes to take effect and become
operative concurrently with the added Article.

Amended Article XIX of the Florida Constitution is
not an added Article. It is a substituted Article to take
the place of original Article XIX of the Constitution.
This substitution took effect January 1, 1919, by the terms
of the amended Article itself. See Correllis v. State, 78
Fla. 44, 82 South. Rep. 601.

Even though original Article XIX was in effect as
organic law until January 1, 1919, yet it did not limit the
power or the duty of the legislature in December, 1918,
to enact anticipatory statutes to enforce amended Article
XIX that had already been adopted at the polls in Novem-
ber, 1918, to take effect January 1, 1919. Original Article
XIX was a limitation upon the law-making power of the
legislature only as to prohibitions of the sale of intoxi-
cating liquors. Its provisions were not a limitation upon
the power of the legislature to enact anticipatory statutes
to meet the requirements of an amendment to Article
XIX that had been adopted to inevitably become a sub-
stitute for original Article XIX; and the statute here
considered, which by its express terms took effect Jan-
uary 1, 1919, was not in conflict with original Article
XIX, since the statute was not operative at any time
when original Article XIX was in force.

The added Article XVIII of the Federal Constitution
is a grant of lawmaking power to the Congress, without

8—Vol. 80

which Congress has no general authority (not covered by the granted war powers and interstate and foreign commerce powers of Congress) to enact laws regulating the manufacture or sale of intoxicating liquors in the states. But the State legislature has plenary power to enact such laws, except where restrained by the constitution; and the constitution did not restrain or limit the power of the legislature to enact the statute here involved, to take effect concurrently with amended Article XIX on January 1, 1919, for the expressed purpose of enforcing the provisions of amended Article XIX, as contemplated by the amendment showing the will of the electors of the State expressed pursuant to the constitution. The statute is not palpably arbitrary or oppressive. See 238 U. S. 446; 225 U. S. 623.

Constitutional provisions are designed to effectuate practical government regulated by law; and they should be so interpreted as to accomplish and not to defeat their purposes or to lessen their efficiency. Article XIX as amended commands legislative enactments to enforce its provisions; and to hold that though the amended Article had been duly adopted by the people to take effect later, the commanded regulations could not legally *be enacted* until *after* the amendment became effective, when the provisions of organic law do not require such a holding, and when the legislature had full power to enact such laws independently of the organic command, would make the courts administrators of technical formulae developed by construction, to the sacrifice of substance and to the disregard of the manifest intent and purpose of organic provisions as adopted by the people of the State, thereby rendering government impotent to effectuate its own purposes as expressed by the people whose government it is,

and who have acted in full accord with the requirements of organic law. Even if the validity of the statute be considered doubtful, all doubts should be resolved in favor of the constitutionality of the statute. And even if it be supposed that the statute is contrary to the spirit of the constitution it cannot for that reason be declared to be void. Wooten v. State, 24 Fla. 335, text 345, 5 South. Rept. 39; 6 R. C. L. 104; 12 C. J. 752; 120 N. E. Rep. 19. The courts do not regulate the policy of statutory enactments. See 67 Fla. 370. 1 Lewis Suth. Stat. Construction Sec. 85 and authorities cited.

The guarantees of life, liberty and property contained in the Constitution are not absolute. All private rights are enjoyed by individuals as members of the public constituting organized society; and such rights are subject to the paramount right of the State to modify them to conserve the public welfare for *salus populi est suprema lex*. See 70 N. J. Eq. 895, 65 Atl. Rep. 489, 14 L. R. A. (N. S.) 197; 10 Ann. Cas. 116, 118 A. S. R. 754; 12 C. J. 948. Restrictions upon private rights are compensated for by the individuals sharing in the general benefits accruing from the regulations limiting private rights. Gardner v. Michigan, 199 U. S. 325.

The possession of intoxicating liquors may be regulated as a means of preventing the unlawful acquisition of it. Crane v. Campbell, Sheriff, 245 U. S. 304, 38 Sup. Ct. Rep. 98; United States v. Hill, 248 U. S. 420, 39 Sup. Ct. Rep. 143; Gray v. Kimball, 42 Maine 299.

The constitutional right to acquire, possess and protect property relates to such subjects of property as persons may acquire and have in possession under lawful regulations to conserve the general welfare; and such regulations may limit the subjects of property as to kind

or quantity, either or both, or as to the manner or place of possession, when expedient for the common good, and when due process and equal protection of the laws are not denied to any person by the regulations. The necessity and wisdom of statutory regulation are not reviewed by the courts. See 137 U. S. 86; 199 U. S. 306, 324; 12 C. J. 753; 120, N. E. Rep. 19.

By forbidding the manufacture, sale, barter or exchange of intoxicating liquors and beverages, and by commanding the legislature to enact suitable laws to enforce the prohibitions, the Constitution not only does not forbid statutory regulations of the possession of such liquors, but it contemplates their enactment as being suitable to enforce the prescribed prohibitions. Marasso v. VanFelt, 77 Fla. 432, 81 South. Rep. 529; 245 U. S. 304.

The plaintiff in error has not shown beyond reasonable doubt that the statute under which he was convicted violates some designated provision of the Constitution, and the order remanding him to custody should be affirmed.

WEST, J., concurs.

ELLIS, J., concurring.

It is conceded that if Chapter 7736, Laws of 1918, had been intended to go into effect before January 1st, 1919, the Act would have been void because of the existence of Article XIX of the Constitution of 1885, which inhibited the legislature from enacting prohibitory legislation as to the sale of intoxicating liquors. See *ex parte* Pricha, 70 Fla. 265.

The question then is: What gave validity to the Act, if it is valid? The amendment to Article XIX, which was adopted by the people in November, 1918, at the general election, held about one month prior to the passage of Chapter 7736, completely removed the limitation upon the legislature as to the enactment of legislation prohibiting the sale of intoxicating liquors in this State, but the amendment provided that it should become effective on the first day of January, A. D. 1919. If the amendment was not a *part of the Constitution* until that date, then the legislature had no power prior to that date to bring into existence an Act dealing with the subject of the prohibition of the sale of intoxicating liquors and depend upon an amendment to the Constitution to give vitality to the act. The passage through the legislature of such an Act was without authority. The legislature had no power to deal with the subject. It was prohibited by the terms of the Constitution from doing so. Such an Act would have been void. It would have been nothing more than a blank piece of paper. See Cooley Const. Lim. 188; Mining Co. v. Secretary of State, 82 Mich. 573.

An amendment to the Constitution granting power to the legislature by removing a limitation does not have a retroactive effect and give life to a void act of the legislature, which passed that body when the limitation or inhibition rested upon it. See Cooley Const. Lim. *supra.*

If, however, the amendment to Article XIX, which was adopted in November, 1918, became upon its adoption a *part of the Constitution*, then the legislature which assembled under the new Constitution, that is to say, the Constitution as amended, derived its powers from

the people under that instrument, although there still rested upon the law-making body an inhibition by enactment to presently deal with the subject of the prohibition of the sale of intoxicants. There was no express or implied inhibition, however, to enact a statute to become effective at such time in the future as the amendment specified. If the amendment at its adoption became a part of the Constitution, then the legislature had power to enact laws upon the subject with which the amendment dealt, provided such laws were consistent with the provisions of the amendment. In this matter the only restriction being that such laws should not take effect until January 1st, 1919.

Section 1 of Article XVII of the Constitution provides that: "If a majority of the electors voting upon the amendments at such election shall adopt the amendment the same shall become a *part* of the Constitution." This clause has been construed to mean that immediately upon the adoption of an amendment it became operative. See Advisory Opinion, 34 Fla. 500.

Other courts have so construed similar provisions of the Constitutions of other States.

There was no proposition to amend Article XVII. An implied repeal or amendment of the Constitution is not favored. The old and the new provisions of the organic law should stand and operate together if it can be done without contravening the intent of the law-making power (the people) as expressed in the latter provision. See Board Public Instruction Polk County v. County Commrs. Polk County, 58 Fla. 391; Mugge v. Warnell Lumber & Veneer Co., 58 Fla. 318.

While the amendment became a part of the Constitution when it was adopted, its effect upon the manufacture, sale, barter or exchange of alcoholic or intoxicating liquors, was postponed until January 1st, 1919, but the inhibition which rested upon the Legislature under the old article of the Constitution to deal with the subject of prohibition at all was removed to the extent that such legislation might be enacted whose operation was intended to run concurrently with the period during which the amendment was to be effective. If such was not the effect of the amendment, then the quoted words of Section 1, Article XVII, are meaningless so far as this amendment is concerned, or the amendment by its terms was removed from the influence of that provision of the Constitution.

To maintain either position is to assert that the phrase "shall go into effect" is synonymous with the phrase "shall become a part of the Constitution." But such is not the case because, while the amendment became at its adoption a part of the organic law its inhibition upon the sale of intoxicating liquors became operative at a later date. Section 2 of the amendment which provides that "The Legislature shall enact suitable laws for the enforcement of the provisions of this article" was a command to legislate upon the subject, but it conferred no power. The power to enact suitable laws to enforce the intention of the people as expressed in the amendment became vested in the Legislature upon the amendment becoming a part of the Constitution; that is to say, at its adoption, the limitation being that such legislation should not go into effect before January 1st, 1919.

BROWNE, C. J., dissenting. TAYLOR, J., concurring in the dissent.

I dissent from the decision, and from both opinions in this case. Three of the Justices concurred in the conclusion, but two seem to dissent from the premises of each other, although they reach the same conclusion.

Mr. Justice WHITFIELD, following the decision in the case of Correlis v. State, decided at the June, 1919, term of this court, takes the position that the amendment to Article XIX did not go into effect or become a part of the Constitution until January 1, 1919, but that the Legislature had authority to pass the Act, notwithstanding the prohibition contained in Art. XIX that was in force prior to January 1, 1919.

Mr. Justice ELLIS does not concur in this view. He says, "If the amendment was not a *part of the Constitution* until that date, then the Legislature had no power prior to that date to bring into existence an Act dealing with the subject of the prohibition of the sale of intoxicating liquors and depend upon an amendment to the Constitution to give validity to the Act. The passage through the Legislature of such an Act was without authority. The Legislature had no power to deal with the subject. It was prohibited by the terms of the Constitution from doing so. Such an Act would have been void. It would have been nothing more than a blank piece of paper. See Cooley Const. Lim. 188; Mining Co. v. The Secretary of State, 82 Mich. 573."

So far, I quite concur with Mr. Justice ELLIS; but when he contends that the amended Article XIX "became a part of the Constitution when it was adopted" we part company, and I am forced to do so by the decision of this court in the Correlis case, *supra*.

Mr. Justice ELLIS cites the Advisory Opinion to the Governor, 34 Fla. 500, 16 South. Rep. 410, as authority

for holding that this amendment became a part of the Constitution immediately upon its adoption in the November election.

There can be no controversy about the soundness of that proposition as to amendments generally, but I think it equally uncontrovertible that the Constitution may be so amended as to take any part of it out of the operation of any other part. An amendment that provides that it shall not go into effect until some date subsequent to its adoption by the vote of the majority of the electors, is a positive constitutional enactment that it *shall not become a part of the Constitution immediately upon its adoption.*

Such was the decision of this court in the Correlis case. There we said, "This of itself rescued the amendment from the provision of Art. XVII by which amendments to the Constitution become effective upon receiving the approving majority of the votes of the electors."

This view finds support in the text books and reports. Thus, "The time an amendment becomes operative may be fixed by the Constitution or *by the terms of the amendment itself.*" 12 Corpus Juris, 721.   (The italics are mine).

In Reade v. City of Durham, — N. C. —, 92 S. E. Rep. 712, the court said, "The time when the amendments should become effective is as much a part of the submission as the amendments themselves. No one contends that if the provision as to the time the amendments should take effect had been submitted as a part of the amendments and voted on by the people it would be operative."

"The general rule that Constitutions and Constitutional Amendments take effect upon their ratification by the people, unless otherwise provided in the instrument it-

self or the resolutions submitting them, applies to sovereign states possessing within themselves the power to make and unmake Constitutions." Farrar v. St. Louis & S. F. R. Co., 149 Mo. App. Rep. 188, 130 S. W. Rep. 373.

The Ohio Constitution had a provision similar to ours that when an amendment is adopted by the electors it "shall become a part of the Constitution." A resolution of the Ohio Legislature proposing an amendment to the Constitution provided that if a majority of the electors voting on the amendment should adopt the same, it should become part of the Constitution on and after the first day of January, 1914.

This resolution was not submitted to a vote of the people with the amendment. For that reason it was held that the mere passage by the Legislature of such a resolution could not prevent the operation of the constitutional provision that amendments should become part of the Constitution upon their adoption by the electors; but the court said "The Constitution is positive in its terms and provides that the amendment shall become a part of the Constitution when a majority of the electors voting on the same shall adopt it. The time when an amendment is to become effective can be submitted to the electors, as in the case of the amendments of 1912, wherein it was expressly provided when they should go into effect. * * * There is nothing in the Constitution of this State postponing the operation of an amendment, and it cannot be postponed unless the proposition to postpone is submitted to the electors and is adopted by a majority of those voting thereon." State ex rel. McNamara v. Campbell, 94 Ohio St. 403, 115 N. E. Rep. 29. This is entirely in accord with our position in the Correlis case.

An amendment to a Constitution cannot become effective without being a part of the Constitution, and conversely it cannot be a part of it, without taking effect. And this is peculiarly so, where there would be two conflicting provisions, both parts of the Constitution at one and the same time.

The terms "a part of," "be effective," "take effect," "be in operation," "in force" are used interchangeably by text writers and in opinions by Justices of Courts of last re sort, in relation to the effect of constitutional enactments upon legislative action.

Both opinions in this case concede that prior to January 1, 1919, the old Art. XIX was in force as part of the Constitution. This article was an inhibition on the Legislature to enact "actual or practical prohibition" for the entire State. Ex parte Lewinsky, 66 Fla. 324, 63 South. Rep. 577; Ex parte Pricha, 70 Fla. 265, 70 South. Rep. 406. In the Pricha case this court said, "Unquestionably but for the provision contained in Art. XIX of the State Constitution, the Legislature would have the power to prohibit and suppress the traffic in intoxicating liquors."

Article XIX, as amended, prohibits absolutely the "manufacture, sale, barter or exchange" of intoxicating liquors and beverages.

The original Article XIX placed certain limitations upon the power of the Legislature; the amended article removed them. They were repugnant to each other, and each cannot be a part of the Constitution at the same time.

The Legislature was fully cognizant of the provision of Sec. 1, Art. XVII—and of the decision of this court in the Advisory Opinion to the Governor, *supra,* when it

submitted to the vote of the people as a part of the amendment to the Constitution, a condition rescuing it from the provisions of Art. XVII.

The decision of this court in the Correlis case, *supra*, that was concurred in by all the Justices, seems to me conclusive on this question.

"By the terms of this amendment it was to go into effect on the first day of January, A. D. 1919. This of itself rescued the amendment from the provision of Article XVII, by which amendment to the Constitution become effective upon receiving the approving majority of the votes of the electors at the election. Criminal Costs Amendment, Advisory Opinion to the Governor, 15 Fla. 735; see also, Basnett v. City of Jacksonville, 19 Fla. 664. In those cases the amendments did not fix a day subsequent to the adoption for the amendment to take effect. 12 C. J. 721; Reade v. City of Durham, *supra;* Am. & Eng. Ency. Law (2nd ed.) 910.

Article XIX of the State Constitution providing for local option sales of intoxicating liquors remained in force until January 1, 1919, when it was superseded by the amendment to Article XIX forbidding the manufacture, sale, barter or exchange of alcoholic or intoxicating liquors and beverages in this State."

## ON REHEARING.

WHITFIELD, J.—The points enumerated in the petition for rehearing were not overlooked by the court.

Even if Chapter 7736, Acts of 1918, is "supplementary to Chapter 7288 of the Laws of Florida of 1917," as stated in the petition for rehearing, but not in the act itself,

the validity of Chapter 7736 is not thereby affected. Chapter 7288 expressly provides that, "This act shall become operative upon the adoption by the electors of the proposed amendment to Article XIX." If Chapter 7288 be invalid, that does not render Chapter 7736 invalid. Chapter 7733 by its terms took effect while Original Article XIX was in force. Its supposed invalidity does not affect the validity of Chapter 7736.

Chapter 7736 could not have been "passed to overcome the decision of the Supreme Court in the Francis case." (76 Fla. 304, 79 South. Rep. 753), as asserted in the petition for rehearing, since Original Article XIX to which the decisions in the Francis case refers, had ceased to exist as organic law when Chapter 7736 *became operative as* law. The decision in the Francis case has reference to Chapter 7284, which purported to be effective as law *while Original Article XIX of the Constitution was in force.*

The fact that Chapter 7736 contains a provision that "The intention is hereby expressed that this Act shall be construed as supplementary to the Act approved April 24th, 1917 (Chapter 7283), and so much of said Act as is not clearly inconsistent with the provisions of this Act shall remain in full force and effect throughout the State when this Act goes into effect," does not affect the validity of Chapter 7736 in the particulars involved in this case. Section 22, Chapter 7736, expressly provides "That, if for any reason, any section or provision of this Act shall be adjudged unconstitutional, or otherwise inoperative, such fact shall not be held to affect any other section or provision in this Act contained, but the same shall remain in full force and effect as if the section or provision adjudged unconstitutional or inoperative had not orig-

inally been incorporated in this Act." "The Act approved April 24, 1917," is Chapter 7283, not Chapter 7284, that was involved in the decision in the Francis case.

In Fine v. Moran, 74 Fla. 417, 77 South. Rep. 533, it was held that statutory regulations of the *sale of non-intoxicating beverages* in dry counties did not violate Original Article XIX of the State Constitution, since such regulations were within the police power of the State and tended to enforce prohibitions of the sale of intoxicating liquors in dry counties.

In Ex Parte Francis, 76 Fla. 304, 79 South. Rep. 753, it was held that statutory regulations of the *possession* and *transportation* of *intoxicating* liquors violated Original Article XIX, because the inherent police power of the State to regulate the possession and transportation of intoxicating liquors in dry counties, was by implication restrained by Original Article XIX, under which *the sale* of intoxicating liquors was prohibited by local option elections.

In Correlis v. State, 78 Fla. 44, 82 South. Rep. 601, it was held that Amended Article XIX of the State Constitution took effect and became operative on January 1, 1919, and on that date entirely superseded original Article XIX. Amended Article XIX was only potentially efficacious between the date of its adoption at the general election in November, 1918, and the date on which the amended article became effective, January 1, 1919.

In Morasso v. Van Pelt, 77 Fla. 432, 81 South. Rep. 529, it was held that Chapter 7736, Laws of Florida, the statute here involved, regulating the transportation and possession of intoxicating liquors in the State, did not violate amended Article XIX of the State Constitution

which forbids the manufacture, sale, barter or exchange of intoxicating liquors in this State.

In this case it was held that Chapter 7736, Laws of Florida enacted in December, 1918, to take effect January 1, 1919, did not violate original Article XIX, nor any other provision of the Constitution, since it did not become effective or operative as law until original Article XIX had ceased to be a part of the Constitution.

The prosecution in this case is for a violation of Chapter 7736, Laws of Florida, committed before the Federal Prohibition Amendment, Art. 18, became effective on January 16, 1920, and this proceeding is not affected by the Federal amendment or the statutory enactments of Congress thereunder.

Original Article XIX was a limitation upon the power of the legislature only in making effective any other method for determining whether *the sale* of intoxicating liquors *should be prohibited,* except the method provided in the Article, *viz.* local option elections.

In giving direct authority severally to the counties of the State to have local option prohibition of the sale of intoxicating liquors, original Article XIX did not otherwise limit the police power of the legislature. The rule *expressio unius est exclusio alterius* might be applied to limit the power of the legislature where the particular terms of an organic provision *specifically regulating legislative action as to the sale or gift of intoxicating* liquors, show an intent to thereby exclude legislative power to regulate the *mere possession* of intoxicating liquors, matters not mentioned in the organic provisions, as was held in State v. Gilman, 33 West Va. 146, 10 S. E. Rep. 283; Holley v. State, 14 Tex. App. 505; Common-

wealth v. Campbell, 133 Ky. 50, 117 S. W. Rep. 383. But
the rule of *expressio unius est exclusio alterius* can have
no application to limit the powers *of the legislature*
where express particular authority is conferred *directly*
by the constitution itself, not upon the legislature, but
*upon the counties* respectively, to prohibit the sale of
liquors. This is necessarily so when the organic pro-
vision by its own force (and not *through legislative ac-
tion* as in Texas, Kentucky and other States) *directly*
confers a particular power *upon the counties* and ex-
pressly requires the legislature to enact laws to enforce
the power conferred on the counties by the constitution
itself. Even if the express organic command to enact
laws to enforce the specific power conferred by the Con-
stitution itself directly on the counties, is superfluous,
upon the theory that such power and duty inheres in the
legislature, certainly the express command does not im-
pair the legislative authority in the premises, and the
express command clearly shows an intent not to take
from the legislature any power that is not expressly con-
ferred upon the counties. Therefore in conferring
*directly upon the counties* severally authority by local
option elections to prohibit the *sale* of intoxicating
liquors, original Article XIX did not limit or impair
the inherent and commanded power and duty of the legis-
lature to enact laws to enforce county local option pro-
hibition of the sale of intoxicating liquors; and such
laws may include statutory regulations of the transpor-
tation and possession of intoxicating liquors where the
sale of such liquors *is unlawful*, since it is obvious and
not denied that regulations of the possession and trans-
portation of intoxicating liquors tend to prevent unlaw-
ful sales of such liquors and to enforce prohibition of
sales pursuant to the Constitution, and there is nothing

in the Constitution that expressly or impliedly forbids the enactment of such regulations by the legislature.

In State v. Gilman, 33 W. Va. 146, 10 S. E. Rep. 283, the organic provision that "laws may be passed regulating or prohibiting the sale of intoxicating liquors within the limits of this State," was treated as *a grant of power* to the legislature and not a limitation upon the general law-making power of the legislature, in the holding that such provision forbad a statutory regulation of the possession of spirituous liquors by one person for another by requiring a license therefor to be obtained. The rule *expressio unius est exclusio alterius* was applied apparently upon the theory that the legislature had no power to regulate the *possession* of intoxicating liquors as a means of preventing unlawful sales of such liquors. This assumption was doubtless predicated upon the organic right to possess property, without considering the principle that the possession of property that is harmful in its use may be regulated under the police power without violating organic property rights. Property rights that are subject to government regulation are not protected from such regulation by the organic right to acquire, possess and protect property.

In State v. Sixo, 77 W. Va. 243, 87 S. E. Rep. 267, it was held that the amended constitutional provision forbidding "the manufacture, sale and keeping for sale" of intoxicating liquors, etc., did not render invalid a statute regulating the possession of intoxicating liquors by requiring the containers of such liquors in excess of prescribed quantities to be marked or labeled in a stated manner. The rule *expressio unius est exclusio alterius* was applied in the Gilman case, but not in the Sixo case. The original organic provision apparently was no more a

*grant of power* to the legislature than is the amended provision of the West Virginia Constitution.

The real holding in the Gilman case is that the particular regulation exceeded the police power of the State as interpreted *by the court at that time.* The same may be said of the case of State v. Williams, 146 N. C. 618, 61 S. E. Rep. 61, 17 L. R. A. (N. S.) 299, referred to in Glenn v. Southern Express Co., 170 N. C. 286, 87 S. E. Rep. 136, L. R. A. 1918-B 438; State v. Carpenter, 173 N, C. 767, 92 S. E. Rep. 373. The prevailing views are expressed in Crane v. Campbell, 245 U. S. 304, 38 Sup. Ct. Rep. 98; Barbour v. State, 249 U. S. 454, 39 Sup. Ct. Rep. 316; DeLaney v. Plunkett, — Ga. —, 91 S. E. Rep. 561, L. R. A. 1917-D 926; notes in 2 A. L. R. 1085; Schmitt v. . W. Cook Brewing Co., — Ind. —, 120 N. E. Rep. 19; State v. Ross, — N. D. —, 170 N. W. Rep. 121; Commonwealth v. Intoxicating Liquors, 172 Mass. 311, 52 N. E. Rep. 389, and other like cases.

The Texas Constitution, Section 20, Article XVI, provided that "the legislature shall, · at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town or city, by a majority vote, from time to time may determine whether *the sale* of intoxicating liquors shall be prohibited within the prescribed limits."

Under this organic provision it was in Holley v. State, 14 Tex. App. 505, properly held that the legislature could not authorize the counties, etc., of the State by local option election to prohibit the "gift" of intoxicating liquors. See Stalworth v. State, 16 Tex. App. 345; Steele v. State 19 Tex. App. 425; Nineger v. State, 25 Tex. App. 449, 8 S. W. Rep. 480.

In Ex Parte Brown, 38 Tex. Crim. Rep. 295, 42 S. W. Rep. 554, 70 Am. St. Rep. 743, it was held that "the purpose and effect of the" above quoted provision of the Texas Constitution "was, and is, to restrict and limit the legislative authority to the powers *expressly granted therein,*" and that a statute regulating the cold storage of intoxicating liquors in local option territory was "not within the legitimate scope of this express grant," and not "a fair and reasonable exercise of the police power." See *contra* State v. Phillips, 109 Miss. 22, 67 South. Rep. 651, L. R. A. 1915-D 530.

In the much later case of Longmire v. State, 75 Tex. Crim. 616, 171 S. W. Rep. 1165, Ann. Cas. 1917-A 726, text 729, it is said: "Instead of Section 20 of Article 16 being an implied limitation on the power of the legislature to pass all necessary laws to render effective the prohibition law wherever adopted, we think if the legislature had not already possessed the authority by virtue of being the representative of sovereignty, the authority to pass all necessary laws to render effective the prohibition law wherever adopted would be necessarily implied by virtue of Section 20 of Article 16." See Exparte Davis, — Tex. Cr. App. —, 215 S. W. Rep. 341; Exparte Fulton, 215 S. W. Rep. 331.

The Kentucky Constitution, by Section 61, provided that the general assembly shall "by general law, provide a means whereby the sense of the people of any county, city, town, district or precinct may be taken, as to whether or not spirituous, vinous or malt liquor shall be sold, bartered or loaned therein, or the sale thereof regulated. But nothing herein shall be construed to interfere with or repeal any law in force relating to the sale or gift of such liquors." In Commonwealth v. Campbell,

133 Ky. 50, 117 S. W. 383, 24 L. R. A. (N. S.) 172, 19 Ann. Cas. 159, it was held that a *city ordinance* forbidding a person to transport into the city exceeding one quart of intoxicating liquor was invalid under the above quoted and other provisions of the Constitution that are stated in the opinion in that case. This *decision* related to the powers of the city under the particular statutes and organic provisions. In Town of Cortland v. Larson, 273, Ill. 602, 113 N. E. Rep. 51, L. R. A. 1917A 314, Ann Cas. 1916E 775, the *powers of a municipality* were determined. See City of Delta v. Charlesworth, — Colo. —, 170 Pac. Rep. 965. See also Eidge v. City of Bessemer, 164 Ala. 599, 51 South. Rep. 246, 26 L. R. A. (N.S.) 394, referred to in Southern Exp. Co. v. Whittle, 194 Ala. 406, 69 South. Rep. 652, L. R. A. 1916C 278, where later conceptions of implied limitations upon a legislative exercise of the State's police power are expressed. See Crane v. Campbell, *supra;* Barbour v. State, *supra;* State v. Hosmer, — Minn. —, 175 N. W. Rep. 683; People v. Willi, 179 N. W. Suppl. 542, 109 Misc. Rep. 79; Purity Extract & Tonic Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. Rep. 44; Fine v. Moran, 74 Fla. 417, 77 South. Rep. 533; Marasso v. Van Pelt, 77 Fla. 432, 81 South. Rep. 529; State v. Macek, — Kan. —, 180 Pac. Rep.; re Crane, 27 Idaho 671, 151 Pac. Rep. 1006, L. R. A. 1918A 942; State v. Giaudrone, — Wash. —, 186 Pac. Rep. 870.

In Barber v. Commonwealth, 182 Ky. 200, 206 S. W. Rep. 290, a statute forbidding the transportation of intoxicating liquor into local option territory where its sale was unlawful, was held to be invalid, the court referring to contrary decisions in other States, observed on page 206 that "it does not appear that their police power is limited by constitutional provisions similar to

ours." This explains the reason for the decisions in Kentucky.

It is conceded that in this State the Legislature could have prohibited the sale of intoxicating liquor and could have reasonably regulated its possession and transportation as a means of preventing unlawful sales of such liquors, if the Constitution had not contained original Article XIX. That Article directly conferred upon the counties severally authority to prohibit *the sale* of intoxicating liquors by local option elections. To the authority conferred upon the counties the rule *expressio unius est exclusio alterius* was applicable and the Legislature could not have authorized *the counties* to prohibit or to regulate the possession or the transportation of intoxicating liquors by local option elections. But original Article XIX did not *grant* any power to the Legislature. By conferring the stated authority directly upon the counties, the general lawmaking power of the Legislature was thereby *limited by implication,* but only as to prohibitions of *the sale* of intoxicating liquors, which authority was given by the Constitution directly to the several counties. The Article contained a command that "the Legislature shall provide necessary laws to carry out and enforce the provisions of Section One of this Article." This is the only reference in the Article to the Legislature or to its lawmaking power. Original Article XIX merely limited the general lawmaking power of the Legislature as to *prohibitions of the sale* of intoxicating liquors. It makes it the duty of the Legislature to provide necessary laws to carry out and enforce *prohibitions of the sale* of intoxicating liquors pursuant to local option elections. The inherent power of the Legislature to make lawful prohibitions of sales *effective,* includes of necessity the power to prescribe all

regulations expedient to that end, which reasonably and properly include regulations of the possession and transportation of intoxicating liquors where the sale of such liquors is made *unlawful* pursuant to the Constitution. See 245 U. S. 304; 226 U. S. 192.

Did Original Article XIX forbid the passage of Chapter 7736 to take effect January 1st, 1919?

Chapter 7736 did not become operative or effective until Original Article XIX ceased to be organic law; and neither Original Article XIX nor any other provision of the Constitution forbade the passage of Chapter 7736 while Original Article XIX was in force, the statute by its terms being made to take effect when its validity was secure under amended Article XIX.

In deciding in the Francis case that Chapter 7284 conflicted with Original Article XIX in so far as the statute purported *at that time* to regulate the possession and transportation of intoxicating liquors, the court did not hold that anticipatory statutes could not be enacted that would, under an amendment to the Constitution, be valid *when they became effective as laws* by the terms of their enactment. Amended Article XIX and Chapter 7736 are prospective in their operation. A statute is effective as law only when it becomes operative. Sammis v. Bennett, 32 Fla. 458, text 460, 14 South. Rep. 90; Thompson v. State, 56 Fla. 107, 47 South. Rep. 816; Thorp v. Smith, 64 Fla. 154, 59 South. Rep. 193; in re Alexander, 53 Fla. 647, 44 South. Rep. 175; State v. Bentley, 80 Kan. 227, 101 Pac. Rep. 1073; Gilbert v. Ackerman, 159 N. Y. 118, 53 N. E. Rep. 753, 45 L. R. A. 118.

As neither amended Article XIX nor Chapter 7736 was in force until after Original Article XIX had ceased to

be a part of the Constitution, there was no conflict between Original Article XIX and amended Article XIX, or between Original Article XIX and Chapter 7736. Chapter 7736 did not purport to regulate the possession and transportation of intoxicating liquors while Original Article XIX was a part of the Constitution. The fact that Chapter 7288 was enacted in 1917 "to make effective Article XIX of the Constitution of the State of Florida as amended," such act to take effect upon the adoption of the proposed amendment to Article XIX, can have no bearing on the validity of Chapter 7736.

Whether amended Article XIX, in so far as it forbids the manufacture, sale, barter or exchange of intoxicating liquors, is self-executing or not, the validity of Chapter 7736 is not thereby affected. Amended Article XIX does not provide penalties for its violation, nor does it provide regulations suitable to its effective enforcement.

The provisions of amended Article XIX that "The Legislature shall enact suitable laws for the enforcement of the provisions of this Article" does not "have the effect of postponing the effectiveness of the amendment as a part of the Constitution of the State until there should be legislative regulation under the new Article after it becomes effective." There was and is nothing in the Constitution or Original Article XIX forbidding the passage of Chapter 7736 in December, 1918, to take effect January 1, 1919 concurrently with amended Article XIX that had already been adopted at the polls to take effect at the stated time. As Chapter 7736 was not effective as law until after Original Article XIX had ceased to be organic law, it could not have conflicted with such Article.

In substance the holding is that neither Original Article XIX nor any other provision of the Constitution

forbade the passage and approval of Chapter 7736 in December, 1918, to take effect January 1, 1919, when amended Article XIX became effective as a part of the Constitution; and the Legislature may enact any law not forbidden by the Constitution. It is not contended that the provisions of Chapter 7736 involved in this case are invalid under amended Article XIX. The contention is that such provisions *could not lawfully be enacted* before amended Article XIX took effect.

The petition for rehearing states that "the plaintiff in error concedes that had he violated the law against the *manufacture* or *sale* of intoxicating liuqor he could have been punished under the provisions of Chapter 7288 of the Laws of Florida, 1917." Chapter 7288 was in 1917 enacted "to make effective Article XIX of the Constitution of the State of Florida as amended" and to "become effective upon the adoption by the electors of the proposed amendment to Article XIX." If Chapter 7288 was effective in 1919, for any purpose, no reason appears why Chapter 7736 was not also effective in 1919. After the enactment of Chapter 7288 and before the passage of Chapter 7736, the proposed amendment to Article XIX was adopted at the polls, and would inevitably take effect at the time stated therein.

The decision in Ex Parte Francis, 76 Fla. 303, 79 South. Rep. 753, was that certain provisions of Chapter 7284 *then sought to be enforced* were in conflict with Original Article XIX; but it was not decided that the Legislature could not enact a law to take effect in the future when it would be valid by virtue of an amendment to Article XIX that had been adopted at the polls to become effective concurrently with the statute.

The suggestion that a statute enacted prior to January 1st, 1919, might provide penalties for the *manufacture* or *sale* of intoxicating liquors on and after January 1st, 1919, but that a statute could not be enacted *prior* to January 1st, 1919, to take effect January 1st, 1919, forbidding the *possession* or *transportation of* intoxicating liquors on and after January 1st, 1919, appears to be without support.

.   If Original Article XIX can be held to forbid the enactment prior to January 1st, 1919, of a law to take effect January 1st, 1919, to penalize the possession or transportation of intoxicating liquors after January 1st, 1919, then Original Article XIX, likewise forbade the enactment prior to January 1st, 1919, of statutes penalizing the manufacture or sale of intoxicating liquors, since Original Article XIX related to *local option sales* of intoxicating liquors and not to the possession or transportation of such liquors. There is nothing in Original Article XIX *forbidding the enactment* of a statute regulating the transportation and possession of intoxicating liquors, the statute not to take effect until a stated time in the future when an amendment to Article XIX would be in force under which amendment the statute would validly be operative. See Pratt v. Allen, 13 Conn. 119: Galveston, B. & C. N.-G. Ry. Co. v. Gross, 47 Texas 428. 12 C. J. 742.

The enactment of Chapter 7736 in December, 1918, was not by virtue of power conferred by amended Article XIX, for amended Article XIX was not in force until January 1st, 1919. Chapter 7736 was enacted pursuant to the general lawmaking power of the Legislature; and *the enactment* of Chapter 7736 in December, 1918, to take effect January 1st, 1919, was not forbidden by Original

Article XIX, nor by any other provision of the Constitution. When Chapter 7736 became *effective and operative as law,* Original Article XIX had ceased to be a part of the organic law of the State.

There was no session of the Legislature after the Constitution of 1885, including Article XIX, was promulgated, until April, 1887, after the Constitution and Artile XIX became effective as organic law January 1st, 1887. Nor was there a session of the Legislature after the adoption of the amendment to Section 9 of Article XVI in 1894, until the regular session of 1895. The same may be said of other amendments.

In Sammis v. Bennett, 32 Fla. 458, 14 South. Rep. 90, and Thompson v. State, 56 Fla. 107, 47 South. Rep. 816, it was held the statutes did not have the force of law till they "became operative" on dates subsequent to their enactment.

In Mayor, etc., v. Blackburn, 27 La. Ann. 544, the statute was passed after the new Constitution had been adopted; and an attempt was made to operate under it while the constitutional provisions with which it conflicted were in force. This is like the ordinary case of unconstitutional statutes.

As the enactment in December, 1918, of Chapter 7736 *to take effect January 1st, 1919,* was not forbidden by Original Article XIX, the statute was not "void from the beginning," and its effectiveness on January 1st, 1919, was valid under amended Article XIX, which became operative that day.

"A statute has not *ex proprio vigore,* any force until it becomes the law of the land, and that is when, by its terms, it takes effect." Gilbert v. Ackerman, 159 N. Y.

118, 53 N. E. Rep. 753, 45 L. R. A. 118, 120; In re. Howe, 112 N. Y. 100, 19 N. E. Rep. 513, 2 L. R. A. 825; 36 Cyc. 1192 Notes 6, 7; City of Davenport v. D. & St. P. R. Co., 37 Iowa 624; Jackman v. Garland, 64 Me. 133.

"A statute passed to take effect at a future day is to be understood as speaking from the time it goes into operation, and not from the time of its passage." Price v. Hopkin, 13 Mich. 318; Rice v. Ruddiman, 10 Mich. 125; 26 Am. & Eng. Ency. Law (2nd ed.) 565 notes 1 and 2.

"No statute has *ex proprio vigore,* any force until it becomes the law of the land." Cargill v. Power, 1 Mich. 369, 370. See also Blow v. Lamberon, 1 Iowa 435, text 443; State v. Bentley, 80 Kan. 227, 101 Pac. Rep. 1073; Shook v. Laufer, (Tex. Civ. App.), 100 S. W. Rep. 1042; State v. Williams, 173 Ind. 414, 90 N. E. Rep. 754, 21 Ann. Cas. 986; Mills v. State Board of Osteopathic Registration & Examination, 135 Mich. 525, 98 N. W. Rep. 19, 3 Ann. Cas. 735 and notes.

"Until the time arrives when it is to take effect and be in force, a statute which has been passed by both houses of the legislature and approved by the executive has no force whatever for any purpose." 36 Cyc. 1192, notes 6 and 7; State v. Northern Pac. R. Co., 36 Mont. 582, 93 Pac. Rep. 945, 15 L. R. A. (N. S.) 134, text 138.

The Constitution epxressly provides for the enactment of laws to take effect at a subsequent date; and in the light of reason and of the above authorities the constitutional validity of a statute should be determined as of the time when the statute becomes operative, not when it was enacted, unless the Constitution *forbids the passage* of the law at any time. The validity of a statute cannot be tested till it becomes effective or operative. Original

Article XIX did not forbid the passage of Chapter 7736 to take effect when the Article ceased to be organic law. The legislature may enact any law not forbidden by the Constitution. 12 C. J. 746.

To hold that Chapter 7736 violates original Article XIX of the State Constitution, would be to give to the statute the force of law "during a period when the Constitution (in authorizing the law to state when it shall take effect) has declared it shall not take effect or be in force, and when the obvious design and intention was, that it should have no force or effect whatever." Price v. Hopkin, 13 Mich. 318, text 326-7; Mills v. State Board of Osteopathic Registration & Examination, *supra.* See also *in re.* Alexander, 53 Fla. 647, 44 South. Rep. 175; Thompson v. State, 56 Fla. 107, 47 South. Rep. 816.

In McNeill v. Webeking, 66 Fla. 407, 63 South. Rep. 728, it was said the courts consider only the power of the legislature to *enact* statutes alleged to be unconstitutional. In this case the holding is that neither the Constitution nor Original Article XIX when it was in force, forbad *the enactment* of Chapter 7736 in December, 1918, to take effect after Original Article XIX has ceased to be a part of the organic law.

In 12 C. J. 727, it is said: "An Act of the legislature not authorized by the Constitution at the time of its passage is absolutely void, and is not validated by a subsequent adoption of an amendment to the Constitution authorizing the passage of such an Act." Citing cases. These cases are as follows:

In Seneca Min. Co. v. Osmun, 82 Mich. 573, 47 S. W. Rep. 25, the statute was enacted after the amendment to the Constitution became effective as oragnic law.

In State *ex rel.* Stevenson v. Tufly, 20 Nev. 427, 22 Pac. Rep. 1054, the statute was enacted under an amendment to the Constitution, which amendment was declared to be "not constitutionally adopted."

In Dewar v. People, 40 Mich. 401, and Mt. Pleasant v. Vanice, 43 Mich. 361, 5 N. W. Rep. 378, void ordinances were not validated by a subsequent amendment of organic law.

In State v. Ellis, 22 Wash. 129, 60 Pac. Rep. 136, a void act was not validated by a subsequent constitutional amendment that did not include the void act in its provisions.

In Banz v. Smith, 133 Cal. 102, 65 Pac. Rep. 309, and Fleming v. Hence, 153 Cal. 162, 94 Pac. Rep. 620, a void provision of a city charter was not validated by the subsequent adoption of an amendment to the Constitution.

In all these cases the statutes *purported to be effective* as laws, not merely enactments to take effect at a future date. The word "passage" as used in 12 C. J. 727, has reference to the taking effect of statutes as operative laws. See Schneider v. Hussey, 2 Hasbrouck's (Idaho) 8, 1 Pac. Rep. 343; Harding v. People, 10 Colo. 387, 15 Pac. Rep. 727; Churchill v. Bemis, 45 Neb. 724, 64 N. W. Rep. 348; Rogers v. Vass, 6 Iowa 405; Mills v. State Board of Osteopathic Registration & Examination, *supra;* Shook v. Laufer, *supra;* Scales v. Marshall, 96 Tex. 140, 70 S. W. Rep. 945; State v. Bentley, 80 Kan. 227, 101 Pac. Rep. 1073; 25 R. C. L. 796, Sec. 44; State v. Williams, 173 Ind. 414, 90 N. E. Rep. 754, 21 Ann. Cas. 986; In re Estate of Howe, 112 N. Y. 100, 19 N. E. Rep. 513, 2 L. R. A. 825; State v. Mounts, 36 W. Va. 179, 14 S. E. Rep. 407, 15 L. R. A. 243; Mills v. State Board of

Osteopathic Registration & Examination, *supra;* State v. Williams, *supra;* Evansville & Crawfordville R. Co. v. Barbee, 74 Ind. 169.

In Etchison Drilling Co. v. Flourney, 131 La. 442, 59 South Rep. 867, it was held "that the Legislature was prohibited by the Contitution * * * from passing the Act" and "that the Act was unconstitutional at the time of its adoption or attempted adoption, and that it has not been validated by the subsequent adoption of the amendment to the Constitntion," which amendment *was adopted after* the statute was enacted.

In none of the above cases was the question decided that is presented here.

A statute valid when enacted and made effective is not invalidated by a subsequent amendment to the Constitution, unless the amendment is designed to have that effect. See Cutting v. Taylor, 3 S. Dak. 11, 51 N. W. Rep. 949, 15 L. R. A. 691; Reade v. City of Durham, 173 N. C. 668, 92 S. E. Rep. 712.

Under the express provision of Section 18 of Article III of the Constitution that "no law shall take effect until sixty days from the final adjournment of the session of the Legislature at which it may have been enacted, unless otherwise specially provided in such law," Chapter 7736, "specially provided in such law," that "this Act shall go into effect on the first day of January, A. D. 1919." This specific designation of the future day when the Act "shall go into effect" is equivalent to a constitutional and legislative declaration that the statute shall have no effect until the designated day. 2 Am. & Eng. Ency. Law (2nd ed.) 565; Note 2; Larrabee v. Talbot, 5 Gill (Md.) 426, 46 Am. Dec. 637.

Thus by virtue of the organic law and the express terms of the Act, the operation, force and effect of Chapter 7736 as law was suspended and the statute was rendered innocuous and without efficacy or potency as law from the moment of its enactment to January 1, 1919, when Amended Article XIX of. the Constitution became effective and made the operation of the law valid when it took effect as "specially provided in such law," pursuant to the authority of the Constitution. See in re Hahrer, 140 U. S. 545, text 565, 11 Sup. Ct. Rep. 865; Tinker v. State, 90 Ala. 638, 8 South. Rep. 814; In re Stickler, 43 Fed. Rep. 653, 10 L. R. A. 446; in re Van Vliet 43 Fed. Rep. 761, 10 L. R. A. 451; Starace v. Rossi, 69 Vt. 303, 37 Atl. Rep. 1109; State v. Lord, 66 N. H. 479, 29 Atl. Rep. 556; Commonwealth v. Calhane, 154 Mass. 115, 27 N. E. Rep. 881; State *ex rel.* Bartlett v. Fraser, 1 N. Dak. 425, 48 N. W. Rep. 343; Blair v. Ostrander, 109 Iowa, 80 N. W. Rep. 330, 47 L. R. A. 469.

While Chapter 7736 was suspended and before it became operative as law it could not conflict with original Article XIX or with any other provision of the Constitution, the mere enactment of the statute to take effect at a future day when its operation would be valid not being expressly or impliedly forbidden by any provision of organic law. The enactment of statutes to take effect and become operative in the future being expressly provided for by the Constitution, a large part of the statute laws of the State whose validity is not questioned was enacted to take effect and become operative at dates subsequent to their enactment.

To make Chapter 7736 effective prior to January 1, 1919, so as to conflict with Original Article XIX, would violate the express provisions of Section 8 of Article III

of the State Constitution, making a statute effective as "specially provided in such law."

In order to conflict with Original Article XIX of the Constitution while that Article was in force as organic law, Chapter 7736 must be construed to have been effective as law prior to January 1, 1919, in violation of Section 8 of Article III of the Constitution and in opposition to the express terms of the statute.    26 Am. & Eng. Ency. Law (2nd ed.) 565, Note 2.

The Supreme Court of the United States has held the Act of Congress of October 8th, 1919, known as the Volstead Prohibition Enforcement Act, to be a valid law, although it was passed by Congress before the Eighteenth Amendment to the Federal Constitution *became effective* on January 16th, 1920, and although Congress has no legislative power except such as is granted to or conferred upon it by the Constitution of the United States.    Rhode Island v. Palmer, U. S. Sup. Ct. June 7/20.

If the Volstead Federal Enforcement statute enacted October 28th, 1919, after the Eighteenth Amendment to the Federal Constitution had been adopted by the Legislatures of three-fourths of the States of the Union, but before the amendment became effective January 16th, 1920, is a valid law, when the Congress has no power to enact laws except as that power is granted by the Federal Constitution, then Chapter 7736, Laws of Florida, is a valid law for the reason that the Legislature may enact any statute that is not forbidden by the State or Federal Constitution, and there is nothing in Original Article XIX, or in any other provision of the State Constitution or in the Federal Constitution forbidding the Legislature to enact Chapter 7736, in December, 1918, to take effect

only after original Article XIX had ceased to be a part of the organic law of the State.

In Section 1, Article III of the State Constitution, "the legislative authority of the State is vested in the Legislature." Other provisions of the Constitution relate to specific legislative powers or limitations. As the general lawmaking power of the State is vested in the Legislature, and as no provision of the Constitution forbad the enactment of Chapter 7736, it seems inevitable that its enactment to become effective concurrently with amended Article XIX was within the lawmaking power of the State Legislature.

Even though portions of Chapter 7736 may be invalid, should they be found to be in conflict with organic property rights, the provision of the statute under which the petitioners are held does not violate any organic rights, and being severable and enforceable without reference to portions of the statute that may be invalid, is not affected thereby; and the enactment of Chapter 7736 after the adoption at the polls of amended Article XIX, but before it became operative, the statute to take effect concurrently with the amended Article of the Constitution, does not appear to be violative of any provision or principle of organic law.

Certainly it cannot be said that beyond all reasonable doubt the Legislature had no power to enact Chapter 7736 in December, 1918, to take effect January 1, 1919, concurrently with the then adopted amended Article XIX of the State Constitution; and all the authorities hold that if there is a reasonable doubt as to the constitutionality of a statute, it is the duty of the courts to give effect to the enactment, since a statute is the law of

the land unless it is in undoubted conflict with some identified provision of the State or Federal Constitution.

Affirmed.

ELLIS AND WEST, J. J., concur.

BROWNE, C. J., AND TAYLOR, J., dissent.