STATE ex rel. HARRY KINSELLA, as Agent and Organization Manager of Daytona Jockey Club Co., as Association, for and on behalf of said Daytona Jockey Club Co., v. FLORIDA STATE RACING COMMISSION and ALEX M. BALFE, Chairman, HENRY S. BAYNARD, Secretary, L. T. DAY, J. L. SHARIT and ROY PATIENCE, members of and constituting Florida State Racing Commission.

20 So. (2nd) 258  
December 22, 1944  
Rehearing denied January 18, 1945

June Term, 1944  
En Banc

*Keen & Allen,* for relator.  
*William C. Brooker,* for respondent.

CHAPMAN, J.:

This is a case of original jurisdiction. The relator, Harry Kinsella, as agent and organization manager of the Daytona Jockey Club, by petition, represented that a large number of individuals desired to construct and operate a horse race track at Daytona Beach, Florida; that the association of individuals filed with the State Racing Commission an application for a permit under the several provisions of Chapter 550, Fla. Stats. 1941 (FSA). The State Racing Commission refused or declined to issue the permit, and predicated on the aforesaid petition, we issued to it an alternative writ of mandamus.

The alternative writ alleged that it was the lawful duty of the Commission when functioning under the several Sections of Chapter 550, *supra,* to issue the permit so that an election could be held in Volusia County, Florida, and decide the question of whether or not the permit would be ratified or rejected, and if ratified that the association of individuals, *supra,* would be authorized to construct and operate a horse race track in Volusia County, and if the permit was rejected by the qualified voters of Volusia County, then the permit would be void; that the Act authorized the Commission to make rules and regulations for applicants desiring permits to observe and follow, but in this respect the Commission failed to exercise this rule making power conferred upon it by law.

The alternative writ of mandamus charged that it was the duty of the Racing Commission, when considering the application for a permit for a horse race track, to carefully follow and observe the several provisions of divisions (a), (b), (c), (d), (e), (f), and (g) of Subsection (5) of Section 550.02, Fla. Stats. 1941 (FSA). Likewise Subsections (6) and (7) of Section 550.02, *supra.* The information submitted to the Racing Commission for a permit was in full conformity with these provisions. The application filed with the Racing Commission discloses: (a) the several names of the parties comprising the ownership of the Daytona Jockey Club; (b) that these parties are white Americans and reside at Daytona Beach, Florida; (c) that the location is to be six miles west

of Daytona Beach; (d) a Florida corporation known as Daytona Jockey Club had been organized and R. D. Flippo, W. E. Cavanah and Harry Kinsella are the directors; that the association holds a deed to 752 acres of land on which the plant is to be constructed;

(e) ASSETS:

| | |
|---|---:|
| Cash on Hand | $ 279.80 |
| 752 Acres of Land, as referred to under (4) of application, | 45,120.00 |
| Accounts Receivable | 930.00 |
| Organization Expenses | 36,471.66 |
| Notes Receivable | 109,500.00 |
| Deposit with County Commissioners for Election Expenses | 3,000.00 |
| Total Assets | $195,301.46 |

LIABILITIES:

| | |
|---|---:|
| Accounts Payable | $ 1,020.00 |
| Stock to be issued in Daytona Jockey Club Co. (a corporation organized and existing under the laws of the State of Florida in payment for land and organization expenses and Notes Receivable and Deposit with County Commissioners | 194,281.46 |
| Total Liabilities | 195,301.46 |
| Net Worth | $194,281.46 |

The petition and alternative writ further alleged that the relator deposited with the County Commissioners of Volusia County the sum of $3,000.00 to be used in paying the expenses of an election to be held in Volusia County when called by the Board of County Commissioners pursuant to the provisions of Subsection (6) of Section 550.02, *supra.*

It was alleged that the relator had met all the requirements, conditions, qualifications and rules and regulations

with reference to its application for a permit but regardless of its plain legal duty as provided for in the aforesaid statutes, the said Racing Commission arbitrarily, erroneously and contrary to law denied the application for a conditional horse racing permit. Subsection (7) of Section 550.02 provides that the Commission shall investigate the matters contained in the application in whatever manner the Commission may deem advisable and "if any applicant shall duly fulfill and meet all requirements, conditions and qualifications set forth in this Chapter and the rules and regulations of the Commission authorized hereunder, then the Commission shall *grant* a permit to such qualified applicant as herein provided."

The command of the alternative writ is that the members of the Racing Commission shall forthwith issue or grant to the Daytona Jockey Club Company a horse racing permit in accordance with the application and amendments now on file with the said Racing Commission.

The respondent Racing Commission filed a motion to quash the alternative writ on several grounds: (1) it has not been made to appear that the relator has a clear right to the relief sought; (2) it is not shown that the respondents have an official duty to perform the acts demanded by the relator; (3) discretion cannot be controlled in a mandamus proceeding; (4) official discretion cannot be controlled by mandamus; (5) that the Racing Commission denied the permit pursuant to law; (6) it has not been shown that the respondents abused their discretion; (7) the respondent's denial of the permit was in behalf of the general welfare; (8) the granting of the writ would be a futile act; (9) the permit, if granted, would be without beneficial results to the relator; (10) the relator's claim for the issuance of the permit is doubtful.

Respondents filed an answer to the alternative writ. The answer, in a general way, admits the allegations of fact appearing in the alternative writ. The relief sought by the alternative writ, it is pointed out, cannot be sustained by the applicable law. The answer presents facts from which it may be inferred that it would be financially unsound and not good business to construct a track at Daytona Beach. Great strictness of pleading is required in returns which set up

matters of confession and avoidance. See State ex rel. Davis v. A. C. L. R. Co., 97 Fla. 816, 122 So. 256; State ex rel. Sherrill v. Milam, 113 Fla. 491, 153 So. 100. For sufficiency of return to alternative writ see State ex rel. Taliaferro v. Baskin, 113 Fla. 115, 151 So. 421.

Counsel for relator pose here for adjudication the question viz: If an applicant for a permit under Section 550.02, Fla. Stats. 1941 (FSA), has filed his application and amendments thereto, within the time prescribed by Section 550.02, setting forth all of the information required by Subsection (5) of Section 550.02, and has made the deposit with the county commissioners, required by Subsection (6) of said Section, there being no rules and regulations of the State Racing Commission covering such application, does the Commission have the power to exercise any discretion in granting the permit?

It is settled that a motion to quash an alternative writ of mandamus admits as true all facts well pleaded appearing in both the petition and the alternative writ. See State ex rel. Clower v. Sweat, 120 Fla. 312, 162 So. 689. The return of the respondents to the alternative writ filed herein admits as true the facts alleged in the alternative writ and in a general way the applicable statutory law. The points of cleavage between the parties are the inferences, deductions and conclusions reached in the application of the law to the admitted facts.

Counsel for the respective parties are in accord on two other issues. First, the relator, under Subsection (6) of Section 550.02, *supra,* deposited with the County Commissioners of Volusia County a certified check in the sum of $3,000.00 with which to pay the costs of holding an election in Volusia County as provided for by Section 550.06, Fla. Stats. 1941 (FSA), in the event the Racing Commision should grant to the relator a conditional horse racing permit. Second, the Racing Commission failed or omitted to adopt or promulgate reasonable rules and regulations authorized by Subsection (4) of Section 550.02, *supra,* calculated or designed to aid, guide or direct applicants seeking a conditional horse race track permit. In the absence of rules and regulations *supra,*

Subsection (7) of Section 550.02, is here controlling. It provides:

"(7) Further investigate the matters contained in the application in whatever manner the commission may deem advisable and if any applicant shall duly fulfill and meet all requirements, conditions, and qualifications set forth in this chapter and the rules and regulations of the commission authorized hereunder, then the commission shall grant a permit to such qualified applicant as herein provided."

We have given careful consideration to the application and amendments thereto filed by the relator with the Racing Commission. The minutes, record and proceedings of the Commission concerning the relator's application have been studied and the testimony adduced before it by the parties has been read and examined. It is our conclusion that the relator's application is a substantial compliance with Divisions (a), (b), (c), (d), (e), (f) and (g) of Subsection (5) of Section 550.02, Fla. Stats. 1941, (FSA). Subsection (7) of Section 550.02 makes it the duty of the Racing Commission to investigate the matters contained in the application . . . and if any applicant shall fulfill and meet all requirements, conditions and qualifications set forth in this Chapter (550) . . . then the Commission *shall grant a permit* to such qualified applicant as herein provided. It has been made affirmatively to appear on this record that the relator's application conforms to the several provisions of Chapter 550, *supra.* Then the question arises, was it the legal duty of the Racing Commission under Chapter 550, *supra,* to grant the conditional permit, and, if so, may such legal duty be coerced in a mandamus proceeding?

Our adjudicated cases present answers to the propounded questions. Mandamus proceedings were resorted to in obtaining the cancellation or rescission of a permit for the operation of a Jai-a-Lia Fronton within 1,000 feet of a public school. See State ex rel. Fronton Exhibition Co. v. Stein, 144 Fla. 387, 198 So. 82. The State Racing Commission adopted a rule limiting horse racing on licensed tracks to certain hours. The reasonableness of a regulation was heard and determined in a mandamus proceeding. See State ex rel.

Hollywood Jockey Club, Inc. v. Stein, 133 Fla. 530, 182 So. 863. The apportionment of racing periods to several dog tracks was reviewed in a mandamus proceeding. See State ex rel. Biscayne Kennel Club, Inc. v. Stein, 130 Fla. 517, 178 So. 133. Rules adopted by the Racing Commission governing dog races in Florida are subject to judicial review in mandamus. See State ex rel Mason v. Rose, 122 Fla. 413, 165 So. 347.

Official action by boards, such as State Racing Commission, in arbitrarily and erroneously exercising or abusing discretion given by law is reviewable on mandamus where no other adequate legal remedy exists. See State ex rel. Pinellas Kennel Club v. State Racing Commission, 116 Fla. 143, 156 So. 317; State ex rel. Dade Co. Kennel Club v. State Racing Commission, 116 Fla. 144, 156 So. 343.

The motion to quash by the respondents directed to the alternative writ of mandamus is overruled and denied. We hold that the several allegations of the answer or return of the respondents to the alternative writ fail to state or constitute a legal defense and therefore the peremptory writ of mandamus is hereby awarded as prayed for.

It is so ordered.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.

TERRELL and THOMAS, JJ., dissent.

ADAMS, J., disqualified.

20 So. (2nd) 255                                          June Term, 1944
December 22, 1944                                          En Banc