STATE OF FLORIDA, ex rel., PALM BEACH JOCKEY CLUB, INC., a Florida Corporation, v. FLORIDA STATE RACING COMMISSION and CHARLES F. BALDWIN, WILLIAM B. WATSON, JR., TOM B. SWANN, JAMES D. JOHNSON, and EMIL YDE, as and constituting the members of the Florida State Racing Commission.

28 So. (2nd) 330                                    June Term, 1946
December 10, 1946                              Special Division B

*Paty, Warwick & Paul* and *B. F. Paty,* for relator.

*William B. Watson, Jr.,* and *C. E. Ware,* for respondents.

CHAPMAN, C. J.:

This is a case of original jurisdiction. The relator, Palm Beach Jockey Club, Inc., a Florida corporation, by petition represented to this Court that it had applied to the Florida State Racing Commission for a conditional permit to conduct harness horse racing in Palm Beach County; and that a deposit of $2500.00 to cover the expenses of an election on said permit had been made with the proper officials of said County. in conformity with Subsection 6 of Section 550.02, Fla. Stats. 1941. The original application was amended, and as amended complied with and conformed to the several divisions (a), (b), (c), (d), (e), (f) and (g) of Subsection (5) of Section 550.02, F.S.A., 1943 and rules 12, 13 and 14 of the rules of the Commission adopted March 16, 1945. That the respondent, Florida State Racing Commission, did arbitrarily and contrary to law decline and refuse to issue said conditional permit.

Attached to the petition, and by appropriate language made a part thereof, are certain exhibits relied upon to establish an arbitrary and unlawful ruling on the part of the State Racing Commission, which is challenged in this mandamus proceeding.

Division (a) of Subsection (5) of Section 550.02, Fla. Stats. 1941, requires that an application for a permit shall (a) set out the full name of the person, association or corporation, and if a corporation, the name of the State under which it is incorporated. The relator's application discloses that the applicant. (Palm Beach Jockey Club, Inc.) is a corporation organized, existing and incorporated under the laws of Florida.

(b) If an association or corporation, the nationality, color and residence of the members of the association and the

names of the stockholders and directors of the corporation. The stockholders as given in the application are viz: Frank J. Hale, of New York City; B. F. Paty, West Palm Beach, Florida, and C. H. Warwick, Jr., of West Palm Beach, Florida. The directors are Frank J. Hale, B. F. Paty, and C. H. Warwick, Jr.

(c) The exact location where it is desired to conduct or hold a racing meet. The application describes the 200 acre tract of land to be used as a race track as located in Section 29, Township 43, South, Range 43, East, situated between designated public roads and lying partly within the city limits of West Palm Beach and partly without the city limits of said city.

(d) Whether or not the racing plant is owned or leased . . . , or if a corporation, the names, places of residence of the directors and stockholders of the corporation. The application discloses that the land where the race meeting is to be held is now owned by the Palm Beach Jockey Club, Inc. The directors are Frank J. Hale, 122 East 42nd Street, New York, N. Y.; B. F. Paty, West Palm Beach, Florida; C. H. Warwick, Jr., West Palm Beach, Florida. The stockholders are Frank J. Hale, B. F. Paty and C. H. Warwick, Jr.

(e) A statement of the assets and liabilities of the person (Palm Beach Jockey Club, Inc.) making such application. The application discloses as of June 28, 1946, viz:

"Cash in bank _____$ 4,000.00
  Real estate (appraised value) _____ 60,000.00

      Total _____$64,000.00
Liabilities _____ None
Capital stock _____$30,000.00
Capital surplus _____ 34,000.00

Assets or net worth of applicant corporation _____$64,000.00"

(f) The kind of racing to be conducted and the desired period. The application of the Palm Beach Jockey Club, Inc., filed with the Racing Commission discloses that the kind of racing desired or to be conducted was "harness horse racing,"

and the allotment of time requested of the Racing Commission annually was fixed at 45 days.

(g) Such other information as the Racing Commission may desire. the record discloses that an amendment of the original application then on file with the State Racing Commission was made and additional information supplied by the Palm Beach Jockey Club, Inc.

Rule 12 of the State Racing Commission adopted March 16, 1945, provides that in order to assist in passing on the merits of applicants for permits each applicant shall submit a statement as to the qualifications of the applicant to conduct racing at a track and shall clearly show viz: (a) applicant has in his employ a person with at least five years' experience in organized racing; (b) three affidavits of qualified and experienced individuals to the effect that the proposed plans and specifications of the racing plant are adequate and proper; (c) plans or methods of financing the cost of construction of the racing plant; (d) preliminary sketches or plans of the proposed construction, disclosing seating capacity, accommodations for horses and dogs and an estimated cost of the racing plant; (e) liquid capital available to pay the costs of construction; (f) opinions of qualified persons to the effect that the track when completed and in operation will be sound financially.

Rule 13 provides for an appraisal of all items of real estate, personal property, promissory notes and all assets of the applicant. The Racing Commission reserved the right and privilege, after the proposed appraisal, to determine whether or not the applicant was financially able to conduct a race track.

Rule 14 provides that the applicant shall establish that outstanding stock or shares issued by the applicant corporation are fully paid for prior to applying to the Commission for a racing permit; that no part of the assets shall include promissory notes or other evidence of indebtedness which in any manner may be conditioned upon the action of the Racing Commission granting the permit, etc., or the result of the election whereby a ratification of the permit is sought.

The applicant filed with the Racing Commission under

oath an amendment to its original application and attached thereto were many exhibits (See Tr. pp. 21-47) apparently designed to supply the information desired by the Commission and requested by it under division (g) of Subsection (5) Section 550.02, Fla. Stats. 1943, and Rules 12, 13 and 14 adopted by the Racing Commission March 16, 1945.

The amendment and exhibits attached disclose, in part, that (1) the officers and directors of the Palm Beach Jockey Club, Inc., are white citizens of the United States and of good moral character; (2) that the services of F. Alden Gray, an executive in harness racing, had been engaged by the applicant, along with the services of other experienced in racing viz: Walter McGriff and H. M. Gibson; (3) commitments in · writing to patronize the proposed track had been obtained from some 53 trainers, owners and drivers then patronizing the Roosevelt Raceway at Westburg, Long Island; (4) that a commitment in writing from Frank J. Hale was obtained to supply the applicant with $350,000.00 to be used in constructing buildings, making improvements, purchasing personal property, and other expenditures necessary to the operation of the track; (5) a financial statement of Frank J. Hale appears in the record to the effect that his assets, above liabilities, are more than a million dollars; (6) preliminary plans for the construction of the track reflect an estimated cost ranging between $250,000.00 and $300,000.00; (a) seating capacity of the grandstand was fixed at 3500 and to be constructed of reinforced concrete; (b) club house, capacity fixed at 500, connected by a bridge from the grandstand constructed of reinforced concrete; (c) paddock located near the club with a minimum of fifty stalls; (d) show ring to be constructed immediately in front of the paddock; (e) racing Secretary's office to be placed in a wing of the paddock; (f) chart-making office to be situated near the Racing Secretary's office; (g) an office for the Racing Commission is contemplated; (h) saliva test stalls are to be constructed; (i) an 80 foot ramp constructed of concrete is contemplated; (j) one-half mile track of standard formula at least 100 feet wide; (k) adequate stables; (1) administration offices; (m) maintenance buildings; (n) Judges' stand.

Paragraph 7 of the amendment refers to affidavits submitted to the Racing Commission as requested by it under the subject of further information. These affidavits are made by purported racing experts—the opinions expressed are to the general effect that the plans and specifications for the construction of the racing plant are adequate and that successful racing can be conducted at the plant when completed.

Paragraph 8 of the amendment refers to a detailed financial statement certified to by a public accountant of the property holdings of Frank J. Hale, who by the record appears now to own 300 shares of the Palm Beach Jockey Club, Inc. Additional information appears in the record not pertinent to a decision of this controversy.

On the petition of the relator this Court issued an alternative writ of mandamus, and the respondent, Florida Racing Commission, simultaneously filed a motion to quash and an answer thereto. Counsel of record, by stipulation, amended the alternative writ but agreed that the motion to quash and the answer would for all purposes of this litigation stand and be considered as addressed to the alternative writ as amended according to the stipulation of counsel.

Pertinent grounds of the respondent's motion to quash the alternative writ as amended are viz: (1) the permit applied for was denied pursuant to law; (2) there does not appear a clear legal duty to issue the permit; (3) it was not the official duty of the respondent to issue the permit; (4) a clear legal right to permit has not been established; (5) the application as amended fails to comply with the law applicable to the issuance of conditional permits; (6) the application as amended fails to comply with the adopted rules of the respondent; (7) the granting or denial of the permit is a matter addressed to the discretion of the Racing Commission; (8) (a) relator's rights; (b) interest of the public; (c) rights of other permittees now operating within 100 miles of the proposed track; (d) interest of the State which derives revenue from the operation of the race tracks within the 100 mile area; (9) an abuse of discretion has not been shown; (10) Section 550.02 (F.S.A.3), amended by Chapter 22,072, Acts of 1943, Laws of Florida, prohibits the issuance of the permit; (11)

the power to deny the permit is authorized by the Rules adopted March 16, 1945; (12) the relator has not established its financial ability to construct the racing plant and to operate the same when constructed; (13) the application as amended fails to comply with Rule No. 12 in that the sketches or plans for the construction of the plant are too broad and are general in nature and the estimated costs of construction are so totally inadequate that the information submitted violates the letter and spirit of the Rule; (b) the liquid assets reflected by the application as amended are insufficient to construct the plant and therefore offends Rule No. 12.

The respondent, by answer to the alternative writ as amended, set out many of the legal reasons or grounds for not granting the conditional permit as are set forth in its motion to quash the alternative writ as amended. Additional thereto is a stenographic report of the proceedings of the Racing Commission under date of August 12, 1946, when the conditional permit was by it heard and denied. The answer further sets forth that the permit cannot issue because the proposed plant (situated at West Palm Beach) would be within 100 air miles of three now existing horse tracks. Emphasis is placed on the language viz: "provided, however, that no horse track located within one hundred air miles of each other shall *operate* on the same dates." Subsection (1) of Section 550.02, F.S.A., amended by Chapter 22,072, Acts of 1943, Laws of Florida.

The answer further set out that the horse racing season by statute is limited to an annual period of 120 days and horse tracks may not operate on the same dates; and that the proposed track will be situated within 100 air miles of the (a) Gulf Stream; (b) Tropical Park, and (c) Hialeah tracks. If a fourth license issues then the 120 racing days must by the Racing Commission be apportioned among four rather than the three horse racing tracks, and that the reduction of racing dates to the three now existing permittees will, in the opinion and judgment of the Racing Commission, result in a loss of nearly $2,000,000.00 in revenue to the State of Florida. The population within the 100 air miles area is not sufficient, in the opinion of the Racing Commission, to sustain an addi-

tional horse racing track. The assets of the applicant now valued at $64,000.00, with a commitment to advance at a subsequent date $350,000.00, is not, in the opinion of the Racing Commission, sufficient to finance the proposed track. The sketches and plans of the proposed racing plant are totally inadequate. Other reasons for denying the conditional permit are set forth in the answer, coupled with a prayer that the peremptory writ of mandamus be denied.

Counsel for the Racing Commission contend that Chapter 550, F.S.A., or such parts thereof as may be applicable to dog and horse racing, and as amended by Chapter 22,072, Acts of 1943, coupled with Chapter 22599, Acts of 1945, grant or confer on the State Racing Commission such discretionary powers or authority as may justify it in making an order denying a conditional permit under conditions and circumstances; (1) (a) where the interest of the State, in the opinion of the Racing Commission, would be adversely affected; (b) the interests of three permittees, situated within a 100 air mile area, in the opinion of the Racing Commission, would be adversely affected; (c) the State's revenue, in the opinion of the commission, would be materially reduced.

(2) The Racing Commission, under the law, has the discretionary power to deny a conditional permit to a Horse racing track located within 100 air miles of three now existing horse tracks. (3) the Racing Commission has the discretionary power to deny a conditional permit to a horse track situated within 100 air miles of three existing horse tracks, which if permitted or allowed would reduce the number of racing days to the three tracks, thereby, in the opinion of the Racing Commission, would reduce the revenues flowing to the State from the three tracks. (4) It may be refused on the ground that the permanent population in the area is insufficient. (5) Assets of $64,000.00, coupled with a pledge to advance subsequently $350,000.00 for the track is inadequate financing and can be denied by the Commission for this reason. (6) Inability to secure materials for the construction is a sufficient lawful reason for denying the permit. (7) Insufficient plans and sketches, in the opinion of the Commission, may be a sufficient legal reason for denying the permit.

(8) Failure to otherwise fully comply with the requirements of the Commission is a sufficient legal reason.

We have examined the cases cited to sustain the view that the Racing Commission did not act unlawfully or arbitrarily in denying the conditional permit when exercising the broad discretionary powers conferred or granted by the Florida racing statutes. Our study and analysis of these cases lead to the conclusion that our statutes regulating the issuance of a conditional racing permit were not considered nor decided by this Court in either of the cited cases. These cases refer to broad powers granted to the Racing Commission in cases (a) where conditional permits have been granted; (b) the voters of the county by a majority vote ratified the permit; (c) the county issued to the permittee a license to race; (d) the track constructed; (e) the building constructed; (f) the allotment by the Commission of racing dates to the permittees. The cases relied upon do not apply to applications for conditional permits.

Counsel cite a portion of Subsection 1 of Section 550.02, F.S.A. 1941, viz: " . . . provided, however, that no horse track located within 100 air miles of each other shall *operate* on the same dates." Manifestly it was the intention of the legislature by this provision to regulate the *operation* of horse tracks and not the issuance by the Commission of a conditional permit. The statutes cited in respondents' brief, on examination, disclose that they were enacted and intended solely for the purpose of regulating and directing the *operation* of horse tracks then owning permits to race and the statutes are inapplicable to the issuance of conditional permits. The writer has not been able to find any Act of the Legislature or statute which may reasonably be construed as granting broad discretionary powers to the Racing Commission in granting or denying to applicants conditional permits, but the procedure in each detail is clearly defined by statute and grants but little discretion. It is true that Mr. Justice BROWN, when speaking for this Court in the case of State ex rel. Hollywood Jockey Club, Inc. v. Stein, 133 Fla. 530, 182 So. 863, said "The relator is the holder of a permit which the (Racing) Commission did not have the discretion

to refuse, the determination of that question having been left (by statute) to the votes of the people of Broward County, who thereby authorize it."

Subsection 7 of Section 550.02, F.S.A. 1943, provides, "Further investigate the matters contained in the application in whatever manner the Commission may deem advisable and if any applicant shall duly fulfill and meet all requirements, conditions and qualifications set forth in this Chapter and the rules and regulations of the commission authorized hereunder, then the commission shall grant a permit to such qualified applicant as herein provided." State ex rel. Kinsella v. Florida State Racing Commission, 155 Fla. 387, 20 So. (2nd) 258.

Our conclusion is, after careful study and consideration of the entire record, that the original application and subsequent amendment set forth sufficient data and information to meet substantially the several requirements of divisions (a), (b), (c), (d), (e), (f) and (g) of Subsections (5), (6) and (7) of Section 550.02, F.S.A. 1943.

Section 550.02 (4), F.S.A. 1941, authorized the promulgation of rules and regulations for the control, supervision and direction of applicants, permittees and licensees for the holding and conducting of races and race tracks. There are grave doubts of the extent to which rules may be promulgated going to the qualifications of licensees under this statute (see 11 Am. Jur. Sec. 240 to 242, Inc.)

When the policy is laid down and the standard is established by law the Commission may be authorized to promulgate rules and regulations to meet the policy and accomplish compliance with specified standards, 11 Am. Jur. Sec. 240.

Rules regulating licensed race tracks and race meets are one thing while rules and regulations relating to the procuring of a license are another. The present case involves the latter. It may be important that legislation be had in both respects. If legislative standards are prescribed then the Commission may be authorized to make rules and regulations to accomplish the specified legislative policy. The legislative power cannot be completely delegated as to policy and standards.

It is our conclusion that the application, as amended, substantially conforms to the statutory requirements *supra,* and the lawful requirements of Rule 12, 13 and 14 promulgated by the Racing Commission for the issuance of conditional permits. The motion of the respondents to quash the alternative writ is denied. We hold that the several allegations of the answer or return of the respondents to the alternative writ fail to state or constitute a legal defense and therefore the peremptory writ of mandamus is hereby awarded as prayed for.

It is so ordered.

BUFORD, THOMAS and BARNS, JJ., concur.