325 So.2d 468 (1976)
SEXTON COVE ESTATES, INC., Petitioner,
v.
STATE of Florida POLLUTION CONTROL BOARD, Respondent.
No. W-382.
District Court of Appeal of Florida, First District.
January 26, 1976.
*469 William J. Roberts, and David Linn, Tallahassee, for petitioner.
Robert L. Shevin, Atty. Gen., and William P. White, Jr., Asst. Atty. Gen., for respondent.
HARDING, M., Associate Judge.
This is a petition for writ of certiorari to review an order of respondent State of Florida Pollution Control Board.
Petitioner purchased land in 1969 on Key Largo and in 1970 platted it for and began development of it as a mobile home subdivision. Back in the 1920's a series of upland canals had been dug on this property. Some were dead-end canals connected to the waters of Sexton Cove (Blackwater Sound). In 1970, after enactment by the Congress of U.S. Public Law 91-224, petitioner deepened the canals and constructed an additional canal. That law requires that any applicant for a federal permit to conduct any activity which may result in any discharge into navigable waters shall provide the permitting agency with a certification from the state that there is reasonable assurance that such will not violate reasonable water standards. (Subsequently amended by Public Law 92-500, effective October 18, 1972, 33 U.S.C. § 1251 et seq., and likewise requiring such certificate showing compliance with certain water standards specified in said law.) Petitioner made no application for federal permit before or during construction but after completing its canal work, applied to the Division of Florida Land Sales for registration of the subdivision to sell interstate. That division required a determination from the U.S. Army Corps of Engineers that the canals would remain connected to navigable waters for the protection of lot purchasers. The Corps of Engineers, in turn as a prerequisite to issuing such a permit, required that petitioner, pursuant to Public Law 91-224, supra, obtain an after-the-fact certification from respondent that water quality standards would not be (were not) violated by the canals. Petitioner then made application to respondent for such certification.
In the meantime, during the pendency of the application for certification, § 403.087(1), Florida Statutes, 1971 (Ch. 71-203, § 1, Laws of Florida) had become effective on January 1, 1972. It provided that no stationary installation which would reasonably be expected to be a source of water pollution could be operated, maintained, constructed, expanded or modified without an appropriate and currently valid permit issued by respondent. § 403.031(8) defines "installation" as any structure, equipment, facility, or appurtenances thereto, or operation which may emit air or water contaminants in quantities prohibited by rules of respondent. On February 3, 1972, the staff of respondent by letter denied the certificate stating in part as follows:
"Based on a review of your application for certification and an inspection of the facility by our Regional Personnel, this Department considers that the project will have definite adverse effects on the *470 water quality of Blackwater Sound (Sexton Cove). The dead-end canals which are several hundred feet in length and ten feet in depth are a potential trap for sediments associated with urban run-off. Based on the above this Department hereby denies your request for certification as there is not reasonable assurance that water quality will not be affected."
Thereafter, on July 14, 1972, a conference was held between petitioner and representatives of various state agencies, including the Board of Trustees of the Internal Improvement Fund and respondent, relative to petitioner's dredging operations. Subsequently, at the request of petitioner's attorney, the Executive Director of the Board of Trustees of the Internal Improvement Trust Fund advised petitioner by letter of September 22, 1972, that he had caused a thorough examination of all of that department's records relating to Sexton Cove Estates to be made and that these records reflected no violation of state law or of any regulation of the Trustees of the Internal Improvement Fund by Sexton Cove Estates or by anyone acting on its behalf. On August 7, 1973, petitioner requested that it be allowed to present its case to the full Pollution Control Board for its decision. After considerable delay, the Board advised that a hearing examiner would be appointed and hearing would be held on October 19, 1973. Ten days before the hearing, on October 9, 1973, respondent served notice of violation of § 403.087(1), supra, upon petitioner and the hearing was held on both petitioner's request for review of the denial of certification and on the notice of violation. Respondent thereafter considered the findings of the hearing examiner and denied petitioner's request for certification. Although it found petitioner to be in violation of § 403.087(1), supra, it took no penal action on the violation.
It is clear from the record that in denying the certification, the Respondent used standards that had been established subsequent to the filing by the petitioner of the application for certification. While there may be sufficient evidence to support noncompliance with those standards, this court is reluctant to give its approval to a failure to grant a certification because an application does not meet standards that were not in existence when the application was filed. It is well known that many installations, such as those dredged by the petitioner, which have been completed down through the years in the development of waterfront land in Florida would not meet the standards now in existence. We are not called on to make judgment on the propriety of such standards and do not do so.
Yet, while the petitioner may have acted at its own peril in not securing a proper permit before dredging, we will not hold that such peril would include a denial of certification for failure to comply with subsequently imposed standards. For that reason this cause is remanded for a determination on the application with directions that the standards and regulations, if any, in existence at the time the application was filed be the standards upon which the granting or rejection of the certification is based.
Certiorari is granted and this cause is remanded for hearing and disposition consistent with this opinion.
RAWLS, Acting C.J., concurs.
McCORD, J., dissents.
McCORD, Judge (dissenting).
There is competent substantial evidence to support respondent's denial of certification and its finding that petitioner is in violation of § 403.031(1), Florida Statutes. I agree with respondent that petitioner's *471 canals are stationary installations under the definition of "installation" contained in § 403.031(8), Florida Statutes. Further, there is competent substantial evidence that the depths of the canals are excessive; that they lack circulation, become anaerobic and tend to accumulate undesirable materials; that toxic effects can be expected; that a combination of factors combine to pose a serious threat to future recreational use of the canals; and that the canals are a source of water pollution. It is apparent that respondent cannot truthfully certify to the U.S. Corps of Engineers that petitioner's canals will not discharge pollutants into the waters of Sexton Cove. I do not agree with the majority opinion that the Florida law and regulations as they existed at the time of petitioner's application should be applied. At such time, petitioner was in violation of U.S. Public Law 91-224 in that it had deepened existing canals and had constructed a new one all without obtaining a federal permit. Also, at that time, the above mentioned certification of respondent was required, but Florida had not established the procedure for making such certification.
I note that pursuant to the Rivers and Harbors Appropriation Act of 1899 (33 U.S.C. §§ 403 and 406) the United States District Court for the Southern District of Florida, on February 6, 1975, entered a final judgment in United States v. Sexton Cove Estates, Inc., D.C., 389 F. Supp. 602, ordering among other things that petitioner fill the two canals excavated and opened into Blackwater Sound to a depth of six feet at the mouth, sloping upwards to five feet at the upland ends; fill completely those five tidal canals left unopened to Blackwater Sound with material of the same permeability as that removed; replant the red mangrove fringe along the banks of the restored canals; and present within 30 days adequate plans and a timetable for accomplishing the foregoing. Such judgment is presently on appeal; if it becomes final, the issues involved in this proceeding will be moot.