384 So.2d 891 (1980)
STATE of Florida DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellant,
v.
OYSTER BAY ESTATES, INC., a Florida Corporation, and Robert I. Kornegay, Appellees.
No. OO-444.
District Court of Appeal of Florida, First District.
May 19, 1980.
Rehearing Denied July 2, 1980.
Sheri W. Smallwood and William L. Hyde, Asst. Gen. Counsel, William W. Deane, Asst. Gen. Counsel, Dept. of Environmental Regulation, Tallahassee, for appellant.
Robert J. Angerer, Tallahassee, for appellees.
LARRY G. SMITH, Judge.
The State of Florida Department of Environmental Regulation appeals from a summary declaratory judgment in which the trial court determined that appellees-Oyster Bay Estates, Inc., and Robert I. Kornegay, may proceed with development of their waterfront property in Wakulla County without being required to obtain a permit under Sections 403.087 and 403.088, Florida Statutes (1979). The Department contends that the trial judge erroneously determined, as a matter of law, that since appellees received a permit for a navigational channel in 1969 from the Board of Trustees of the Internal Improvement Fund, the Department may not impose further restrictions on development of the property under legislation enacted subsequent to the date of the permit. We hold that based upon the absence of a factual basis for application of principles of estoppel against the State, appellees' property is subject to the later enacted restrictions, and the judgment is reversed.
The 1969 permit, issued under provisions of Chapter 253, Florida Statutes (1969), authorized *892 construction of a 50-foot wide by 5-foot deep navigation channel in the waters of Apalachee Bay, adjacent to appellees' upland property. Attached to appellees' application for the permit was a plat showing a proposed waterfront subdivision with lots and streets, and with two 40-foot interior canals connecting with a 60-foot canal extending into the navigation channel.
The issue concerning the sufficiency of appellees' 1969 permit arose by virtue of the State's assertion of jurisdiction to impose additional permitting requirements under subsequently enacted legislation. Specially, Chapter 71-203, Florida Statutes (1979), effective January 1, 1972 (now Sections 403.087 and 403.088, Florida Statutes (1979)), required a permit for the construction or maintenance of any installation which will reasonably be expected to be a source of air or water pollution.[1] Additional applications were made to the Trustees, and to the Department, apparently after being advised by the Department that such permits were necessary before the development could be completed as originally planned.[2] Being unsuccessful in obtaining the required permits, appellees filed for declaratory judgment in the circuit court, seeking a determination that the requirements of Sections 403.087 and 403.088 cannot be enforced so as to require a permit.[3] Their basic contention is that their rights to complete the subdivision developments, including the inland canals, under the 1969 permit "are vested and not subject to changing requirements of further permitting."
To support their "vested rights" theory, appellees argue that the 1969 permit application gave "notice" to the Trustees of its proposed system of inland canals. Therefore, appellees argue, the Trustees' issuance of the permit with knowledge of the proposed inland canal construction constituted approval not only of the navigation channel to be dredged in Apalachee Bay, but also the inland canals to be constructed on appellees' upland property. We must reject appellees' conclusions with respect to the effect of the 1969 permit. Chapter 253, Florida Statutes (1969), contained no requirements pertaining to inland canals, and the Trustees had no authority to either approve or disapprove such canals. The Trustees' authority was limited, by law, to control over dredging and filling in navigable waters.[4] Under the applicable statutes, *893 as the trial judge found, no further permits were required for completion of navigational access to the interior canals to be located upon appellees' property, and no state permits were needed for construction of the interior canals.[5] We therefore find no basis upon which it can be concluded that action by the Board in approving the navigational channel (a matter within its jurisdiction), conferred rights upon appellees with respect to construction of inland canals upon appellees' upland property (over which the Board had no jurisdiction).
We have further concluded that appellees' claims regarding a "vesting" of development rights for the inland canals cannot be substantiated by the application of any rule of law to the facts as they have been established in the record of this case thus far. Appellees' theory of "grandfathering" presents a somewhat broad question, which may be stated, generally: What is the effect of legislation, imposing permit requirements for land use or development, enacted subsequent to the landowner's acquisition of rights under preexisting, but differing, regulations or restrictions? For determination of this issue, the trial court relied solely upon this court's decision in Sexton Cove Estates, Inc. v. State Pollution Control Board, 325 So.2d 468 (Fla. 1st DCA 1976).
We do not find Sexton Cove dispositive of this case. In that case the owner had already completed the canal work on its property when it sought to effect registration with the Division of Florida Land Sales in order to sell lots interstate. To comply, the owner was required to furnish a determination from the U.S. Army Corps of Engineers that the canals would remain connected to navigable waters. The Corps of Engineers, in turn, as a prerequisite to issuing such a determination, required the owner to obtain an after-the-fact certification from the State of Florida Pollution Control Board that the water quality standards imposed by the Department would not be violated by the canals.[6] This court found that the Department, in denying the requested certification, had used standards not in effect at the time of the application. However, in reversing the Department's action the court was not ruling upon whether the property owner was subject to statutory enactments under which the standards were promulgated. The opinion mentions the circumstance that, pending the application, amendments to Chapter 403 were enacted (Section 403.087(1), Chapter 71-203, Laws of Florida). This reference to a statutory change was only incidental to the court's decision, since state "certification" was required by federal law independently of and *894 prior to the enactment of the permit requirements of Section 403.087. The court in Sexton Cove held that the property owners' application for certification had to be determined based upon the water quality or other standards and regulations, if any, in existence at the time the application for certification was filed, and the case was remanded for further hearing for that purpose.[7] The applicability of Sexton Cove is, we think narrowly confined to the circumstances of that case, which involved the application of subsequently changed water quality standards, for a project already completed when application for certification was made.[8] See Farrugia v. Frederick, 344 So.2d 921 (Fla. 1st DCA 1977). By contrast, the case now before the court involves duly enacted statutory provisions, the validity of which is not questioned, as to which no prior application for permit or certification had been made by the property owner, with respect to a system of inland canals construction of which, so far as the record thus far establishes, had not even been commenced before the effective date of the statute.
The record before us does not clearly reveal exactly what development or expenditures of funds by appellees took place prior to the date when the Department of Air and Water Pollution Control (now Department of Environmental Regulation) asserted its authority under Chapter 403. Appellees' complaint, which alleges only that appellees "began work" on the development after receipt of the 1969 permit, is silent both as to the date of beginning of the work, and the extent of the work, if any, actually completed. The affidavit of Robert I. Kornegay is likewise silent on the date of commencement or completion of any construction, and furnishes no facts concerning work completed with exception of statements that sewer and water systems adequate for the whole project have been initiated at a cost of $140,000.00, and expenditures of nearly $100,000.00 have been made for roads and culverts and "continuous new permits." The Department points out, among other things, that appellees did not commence or complete either the permitted navigational canal or the inland canals by August 12, 1972.[9] Appellees apparently argued to the trial court that the 50-foot navigation canal was completed prior to that date; but the trial court found, and our examination confirms, that this fact does not appear in any supporting affidavit or elsewhere in the record. It is clear from the above, as well as from other references in this opinion, that there are material factual issues not yet resolved.
Because this case will be remanded, we think it might be helpful to make reference to a few of the decided cases examined in the course of our review. Reasonable restrictions upon the use of property in the interest of the public health, welfare, morals, and safety are valid exercises of the State's police power. Sarasota County v. Barg, 302 So.2d 737 (Fla. 1974); Tampa Northern R. Co. v. City of Tampa, 91 Fla. 241, 107 So. 364 (1926); Neisel v. Moran, 80 Fla. 98, 85 So. 346. The mere existence of a present right to a particular use of land, *895 whether derived from a less restrictive zoning ordinance or no zoning ordinance at all, is not a sufficient "act" of government upon which to base equitable estoppel. Pasco County v. Tampa Development Corp., 364 So.2d 850 (Fla. 2nd DCA 1978). Refusal of the right to construct a canal does not deprive an owner of the right to use his property, but is merely a restriction of the profit he could make on it. Farrugia v. Frederick, 344 So.2d 921 (Fla. 1st DCA 1977). A city's right to prohibit usage of property in violation of a zoning change which it had not adopted until after it had issued a permit was upheld in City of Miami Beach v. 8701 Collins Ave., 77 So.2d 428 (Fla. 1954). There, the court said:
This Court has never gone so far as to hold that a City will be estopped to enforce an amendment to a zoning ordinance merely because a party detrimentally alters his position upon the chance and in the faith that no change in the zoning regulations will occur. It is our view that such a doctrine would be an unwise restraint upon the police power of the government. All that one who plans to use his property in accordance with existing zoning regulations is entitled to assume is that such regulations will not be altered to his detriment, unless the change bears a substantial relation to the health, morals, welfare or safety of the public ... (Id. 430).
There are, obviously, limitations upon exercise of the police power. For example, the State cannot, after selling submerged land to private owners, then deny to such owners the right to use those lands in the only way in which private ownership can be of any value. Askew v. Gables-By-The-Sea, Inc., 333 So.2d 56 (Fla. 1st DCA 1976). Compare Estuary Properties, Inc. v. Askew et al., 381 So.2d 1126 (Fla. 1st DCA 1979).
Relief has sometimes been afforded to the property owner on the theory of equitable estoppel. In this connection see Smith v. City of Clearwater, 383 So.2d 681 (Fla. 2nd DCA 1980), addressing the application of estoppel principles in the context of changing municipal zoning and building regulations. Compare also Compass Lake Hills Development Corporation v. State, etc., 379 So.2d 376 (Fla. 1st DCA 1979), in which this court held that after-the-fact "development of regional impact" compliance (Chapter 380, Florida Statutes), may be required, although estoppel might be raised as a defense to the State's efforts to enjoin maintenance of completed developments. Finally, it should be noted that in the Estuary case, supra, the developers contended that a prior (1970) settlement agreement between former property owners and the trustees of the Internal Improvement Fund, which established a bulkhead line and authorized dredging and filling for navigational canals (under Chapter 253, Florida Statutes), conferred "vested development rights," precluding the State's exercise of authority under the later enacted (1972) Chapter 380, Florida Statutes. This court found that contention to be without merit, stating that the developer's reliance upon Askew v. Gables-By-The-Sea, supra, and Zabel v. Pinellas County Water and Navigation Control Authority, 171 So.2d 376 (Fla. 1965), was misplaced.
Since our reversal is based upon our ruling that the issuance of the 1969 permit does not, as a matter of law, prohibit the imposition of additional later enacted regulations or restrictions on development or use of the property, we express no opinion concerning other issues which must ultimately be resolved in the trial court.[10]
REVERSED and REMANDED for further proceedings consistent with this opinion.
MILLS, C.J., and McCORD, J., concur.
NOTES
[1] A prohibition against violation of water quality standards was established by subsection (1) of Chapter 67-436, Laws of Florida (1967) (Section 403.161, Florida Statutes (1967)), and water quality standards, the predecessors of Chapter 17-3, Florida Administrative Code, were filed with the Secretary of State on May 18, 1967. Although the 1967 Act gave the Florida Air and Water Pollution Control Commission authority to establish a permit system, apparently no regulations implementing this permitting authority for air and water pollution sources were promulgated until May 17, 1972, Chapter 17-3, Florida Administrative Code, following enactment of Sections 403.087, 403.088, Florida Statutes (1971).
[2] It is not clear from the record exactly what additional applications for permits were submitted, nor when and to whom they were made. The Department's answer alleges that appellees made application to the Trustees on or about November 3, 1971, for a dredge and fill permit, submitting with the application a plat dated October, 1971. The Department further alleges that several additional applications were submitted, along with revised plats or plans, including one which called for elimination of the extensive canal system shown on prior plats. The pleading also refers to efforts to extend "an existing canal," but its location and dimensions cannot be determined from the record. Many of the maps and plats in the file are almost illegible, and none are self-explanatory. The answer alleges also that appellees applied to the Department for certification (under Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.), and a permit (Chapter 403), which were denied.
[3] See footnote 1 as to adoption of rules implementing permit requirements of Sections 403.087 and 403.088, Florida Statutes (1971). Appellees do not question the state's authority to enjoin violations of the pollution laws; they seek only to be relieved of the burden of obtaining a permit.
[4] Chapter 253, Florida Statutes (1969), under which appellees received their permit for the navigational channel, vested authority in the Board of Trustees of the Internal Improvement Fund as to navigable waters, including submerged lands. §§ 253.03, 253.123, Fla. Stat. (1969). Air and water pollution generally was governed by Chapter 403, Florida Statutes (1969), under the control and direction of the Department of Air and Water Pollution Control. Section 403.061(16), Florida Statutes (1969), gave the department the power and duty to "Establish a permit system whereby a permit may be required for the operation, construction or expansion of any installation that may be a source of air or water pollution; . ." See footnote I regarding permits. Section 403.061(16) was retained in the 1971 Florida Statutes, but additional provisions were added, particularly Sections 403.087 and 403.088 expressly prohibiting construction or maintenance of an installation "reasonably expected to be a source of air or water pollution . . without an appropriate and currently valid permit issued by the department ...," (Section 403.087(1)), and prohibiting "discharge into waters within the state" which reduces the quality of the receiving waters below the classification established for them (Section 403.088(1) et seq.). Chapter 75-22, Laws of Florida, 1975, transferred powers and duties under Chapter 403, Florida Statutes, to the Department of Environmental Regulation.
[5] The affidavit of John W. Dubose, Chief of the Bulkhead Section of Trustees of the Internal Improvement Fund in 1969, states that he advised appellee, Mr. Kornegay, in 1969 that the state had no jurisdiction over any work constructed landward of the mean high water line, and that no permits were necessary other than for the 50-foot navigational channel across state-owned submerged lands. See footnote 2 concerning appellees' additional permit applications.
[6] Section 21(b), U.S. Public Law 92-224, required state "certification" of compliance with water quality standards. This law was amended in 1972 so as to provide for certification of compliance with effluent limitations. § 401, U.S. Public Law 92-500 (Title 33 U.S.C. § 1341). For history see 1972 U.S. Code Congressional and Administrative News, page 3668.
[7] The Sexton Cove ruling could be applied to a change in water quality standards after application for a permit for completed work under Sections 403.087 or 403.088, Florida Statutes. However, that issue is not presented by this case. On the subject of changes in the law, see: "In general, a change in the law pending an application for a permit or license is operative as to the application, so that the law as changed, rather than as it existed at the time the application was filed, determines whether the permit or license should be granted." 51 Am.Jur.2d, Licenses and Permits, § 46.
[8] See further disposition of the Sexton Cove controversy, found in United States v. Sexton Cove Estates, Inc., D.C., 389 F. Supp. 602, ordering filling and partial filling of canals, modified Sexton Cove Estates, Inc. v. United States, 526 F.2d 1293 (5th Cir.1976), holding district court had jurisdiction to require filling of the "unplugged" canals opening into Blackwater Sound, but not as to the "plugged" inland canals; remanded for further hearing on restoration of the "unplugged" canals.
[9] The 1969 permit provided: "if the work authorized is not completed on or before the 12th day of August, 1972, this authorization, if not previously revoked or specifically extended, shall cease and be null and void." Appellees argue that the Trustees had no authority to so limit the duration of the permit, a matter that we do not determine since it has not yet been ruled upon by the trial judge.
[10] We note, among other things, the claim of waiver of objections to agency jurisdiction asserted in appellant's answer, and the Department's allegation that appellees, subsequent to July 28, 1977, filed a petition for administrative hearing for review of the Department's denial of a permit. We find in the record no indication of whether this remedy was pursued, or not, and we offer no opinion as to the necessity for doing so. However, we do observe that failure to exhaust administrative remedies goes to the subject matter jurisdiction of the court. Swebilius v. Florida Construction Industry Licensing Board, 365 So.2d 1069 (Fla. 1st DCA 1979). See also State Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977); Coulter v. Davin, 373 So.2d 423 (Fla. 2nd DCA 1979).