ANSTEAD, Judge.
This is an appeal by Gulfstream Park Racing Association from an order of the Florida Pari-Mutuel Commission which awarded the most lucrative dates of the upcoming 1981 — 1982 racing season to Hialeah Race Course, Inc. We affirm the order of the Commission.
Gulfstream and Hialeah have competed for the racing dates in question for many years and in most cases the issue has been finally resolved in court. Cited chronologically, these cases are Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, 245 So.2d 625 (Fla.1971); Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, 253 So.2d 429 (Fla.1971); Hialeah Race Course, Inc. v. Board of Business Regulation, 270 So.2d 366 (Fla.1972); State of Florida ex rel. Hialeah Park, Inc. v. Board of Business Regulation, 287 So.2d 679 (Fla.1973); Gulfstream Park Racing Association, Inc. v. Board of Business Regulation, 318 So.2d 458 (Fla. 1st DCA 1975); Hialeah Park, Inc. v. Board of Business Regulation, 339 So.2d 287 (Fla. 3d DCA 1976).
Over the years the legislature has set varying standards for the Commission to utilize in determining which track should receive the more lucrative dates. Originally, the Commission was to allocate the racing dates to the competing tracks “in a fair and impartial manner.” § 550.02, Fla.Stat. (1941). Subsequently, the best dates were to be awarded to the track producing the largest amount of tax revenues in the preceding year. § 550.081, Fla.Stat. (1947). Under this policy Hialeah received the dates for 24 years in a row. In 1971, the Florida Supreme Court invalidated Section 550.081 on the grounds that it operated to perpetuate a system whereby Hialeah would always be entitled to the best dates since the initial award of the best dates usually dictated which track would produce the most tax income for the state. Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, supra. In the litigation ensuing the following year the Supreme Court indicated that a system of rotating the dates annually between the two competitors may be required “unless strong and compelling reasons otherwise dictate.” Gulfstream Park Racing Association, Inc., v. Division of Pari-Mutuel Wagering, supra. The court also pointed out seven factors that the Commission should consider in making its decision:
*1121 1. interest of the state
2. interest of the track owner
3. good will
4. quality of horses
5. track facilities
6. geography
7. skill in management
In 1972 the Supreme Court held that “all other factors being equal, tracks with records as best producers of revenue should prevail unless strong, compelling reasons otherwise dictate.” Hialeah Race Course, Inc. v. Board of Business Regulation, supra. This rule governed until 1975 when, even though Gulfstream had demonstrated that it was the best producer, the choice dates were awarded to Hialeah on the grounds that the combined revenue for the state from all winter dates would be greater and the state’s long-term interests would best be served since Hialeah might not survive financially without the better dates. The 1975 Legislature appeared to endorse this action by enacting Section 550.081(l)(c), Florida Statutes (1975) which provided:
In allocating the racing dates.. . the Board.. . shall take into account the ability of all winter permitholders to maximize handle throughout the entire 144 day racing period so as to generate overall the maximum state revenue from winter per-mitholders collectively.
The award of the dates to Hialeah in that year was upheld by the First District Court of Appeal in Gulfstream Park Racing Association, Inc. v. Board of Business Regulation, supra.
Gulfstream was awarded the middle dates for 1976-1977 and the Third District upheld the award in Hialeah Park, Inc. v. Board of Business Regulation, supra. Thereafter, Hialeah and Gulfstream agreed between themselves to annually rotate the best dates and for the four year period of 1978 — 1981, the tracks did not compete for dates. Under that agreed rotation plan Gulfstream received the choice dates in 1981.
The 1975 legislative revision of Section 550.081(l)(c) continued in effect until 1980, when the legislature enacted Section 550.-081(4), Florida Statutes (1980), which simply provided that the racetracks were to file requests for racing dates for the following year on or before January 4th of each year and permits were to be issued by February 15. No standards of any kind are set out in the statute to guide the Commission in allocating racing dates and to date the Commission has enacted no standards of its own.
This year the two tracks did not agree to continue rotation of the best dates between themselves. However, upon hearing, the Commission awarded the dates in question to Hialeah, which would have been entitled to the dates if rotation had continued. This was done despite the fact that Gulfstream was found to have produced the most tax revenue in the last several years for the dates in question.
The Commission maintains that its decision to continue a system of rotation should be upheld because, absent unusual circumstances not present here, rotation has been proven to serve the interest of the state in raising revenue and to equitably accommodate the interests of the two competing tracks, Gulfstream Park Racing Association v. Division of Pari-Mutuel Wagering, supra. The Commission suggests that it would be especially inequitable to discontinue rotation this year because Hialeah, unlike Gulfs-tream, has not had an opportunity to operate under a new taxing scheme enacted by the legislature prior to the 1980-81 racing season which reduced the amount of revenue to be extracted from the tracks by the state.
Hialeah asserts that the state’s financial interest is best served when Hialeah is awarded the middle dates and Gulfstream the remaining dates because that arrangement produces the most state revenue from the winter permit holders collectively. § 550.081(l)(c), Fla.Stat. (1975); Gulfstream Park Racing Association, Inc. v. Board of Business Regulation, supra.
Gulfstream, on the other hand, contends that the issue should be controlled by the Supreme Court’s decision in Hialeah Race *1122 Course, Inc. v. Board of Business Regulation, supra, mandating that tracks with the record as the best producer should prevail. Under this view, since the Commission has admittedly found Gulfstream to be the best producer, Gulfstream would be awarded the dates.
The main difficulty which this court faces in deciding this case is the lack of standards of any kind provided by the legislature or the Commission.[1] Normally, this deficiency alone might serve as a basis for challenging the validity of the Commission’s action. State ex rel Palm Beach Jockey Club, Inc. v. Florida State Racing Commission, 158 Fla. 335, 28 So.2d 330 (1946). However, Gulfstream has expressly declined to challenge the Commission action on this ground or to raise this issue for our consideration. In addition, all of the parties have urged the court to rule promptly because of the approach of the 1981-82 racing season and the need for extensive preparation by the tracks. Under these circumstances we do not address herein any issues involving the lack of express standards governing the Commission’s action. We must address, however, the nature and extent of the authority vested in the Commission by the legislature and more specifically the issue of the intent of the legislature in enacting the current laws governing the allocation of racing dates.
As noted, supra, Section 550.081(4), without setting out any specific criteria, vests the Commission with the authority to allocate racing dates. In enacting Section 550.-081(4), we believe the legislature intended to free the Commission from the restraints of any specific formula such as that contained in the statute which preceded the current enactment.[2] We do not believe the legislature intended that the Commission’s discretion be limited to any single test such as the maximum state revenue theory set out in the prior act and advanced by Hialeah, or the best producer concept evolved from the Supreme Court’s review of the 1947 legislation and advanced by Gulfs-tream. However, we do not perceive that the legislature intended to prohibit the Commission from considering the criteria set out in the prior legislation or case law. Rather, we believe that the legislature was well aware of the prior legislation and litigation concerning the allocation of racing, dates and the various criteria which have previously been utilized by the courts and the legislature in allocating racing dates. By intentionally omitting specific criteria, it appears that the legislature intended to vest the Commission with broad discretion to consider any factor necessary to best serve the interest of the state and equitably accommodate the interests of the competing tracks.
At one time or another numerous factors, all set out in previous legislation or court decision, including the seven factors noted previously have been recognized as valid and important factors to be considered. But the previous criteria have been valid and relevant only to the extent that at the time invoked they best served the interest *1123 of the state and did not unlawfully discriminate against the rights of any of the tracks. Based on our analysis of the intent of the legislature, we are unable to conclude that the Commission, in deciding to continue a system of rotation, has abused its discretion in the case at hand.[3] The rotation system, assuming only two competitors for the dates in question as has been the case for some time, has previously been recognized as a proper and equitable method of awarding the dates, absent compelling reasons to the contrary. Gulfstream Park Racing Association, Inc. v. Division of Pari-Mutuel Wagering, supra. There has been no demonstration that the Commission abused its discretion in concluding that there were no compelling reasons to the contrary in this instance. In addition, given our view of the legislature’s grant of discretion to the Commission, we are unable to conclude that the Commission erred in considering application of the new taxing scheme as a proper factor in its decision. In sum we find that the Commission has acted within the grant of authority of the legislature and that there is substantial competent evidence in the record to support the Commission’s decision.
Accordingly, the final order of the Commission is affirmed.
LETTS, C. J., and GLICKSTEIN, J., concur.

. The record does reflect that after the Commission voted to grant Hialeah the dates in question for 1982 the Commission also unanimously approved the following motion made by Commissioner Abramson:
MR. ABRAMSON: Mr. Chairman, I would like to make a motion, if I may, as a matter of clarification of my previous motion to award the middle dates for 1982 to Hialeah.
It is the intention of this Commission that in the event that Hialeah fulfills the obligations to the public, the State and horsemen, as discussed today the Commission will continue a rotation of the middle dates in the year 1983 and four.

. In 1977 the legislature, in Chapter 77-167, Laws of Florida, determined that § 550.081, as amended (maximum aggregate handle), should continue in effect until July 1, 1979, at which time the former language of the section would be revived. In 1979, the legislature postponed the reversion to the 1947 statutory scheme until July 1, 1980. However, in 1980 the legislature enacted Chapter 80-57, Laws of Florida, which entirely deleted the 1947 scheme from § 550.081, and instead changed § 550.081(4) to provide the Commission with the authority to grant the dates but provided no guidelines, either directly or by reference to prior legislation.

. Gulfstream has also challenged Hialeah’s late filing of its application for the dates in question. However, we believe it was within the Commission’s jurisdiction to consider the application which was not filed until January 5, 1981 (instead of by January 4, 1981, a Sunday), at the Commission’s own urging.