407 So.2d 263 (1981)
GULFSTREAM PARK RACING ASSOCIATION, INC., Appellant,
v.
DIVISION OF PARI-MUTUEL WAGERING, DEPARTMENT OF BUSINESS REGULATION, a State Agency, and Gary R. Rutledge, As Director of the Division of Pari-Mutuel Wagering, Appellee.
No. 80-2223.
District Court of Appeal of Florida, Third District.
December 8, 1981.
*264 Landefeld & Romanik and David S. Romanik, Hollywood, Spector, Tunnicliff & McCord, Tallahassee, for appellant.
William A. Hatch, Tallahassee, for appellee.
Before HENDRY, NESBITT and JORGENSON, JJ.
NESBITT, Judge.
Gulfstream appeals a final order entered by the Division denying it a permit to engage in quarterhorse racing.
The issue is whether Gulfstream could be denied the permit on the basis that it would not be used within one year from the date of issuance.
Pursuant to Section 550.33, Florida Statutes (1979), one seeking authority to engage in quarterhorse racing must go through a two step process. First, the track must apply for a permit from the Division. § 550.33(1), supra. The application must set forth the information required by Section 550.02(4), Florida Statutes (1979). After the permit has been approved, the permittee track may obtain a license and allocation of racing dates on an annual basis. § 550.33(2)(a), supra.
On November 27, 1979, Gulfstream filed the first plenary application[1] for a quarterhorse racing permit ever sought in the State of Florida. A hearing was conducted on the application on August 25, 1980. On September 17, 1980, a provisional order was entered denying the permit without prejudice provided Gulfstream supplement its application with the following information: (1) the desired period as to when racing was to begin; (2) a statement under oath from the applicant as to when racing would commence pursuant to the proposed permit; (3) a statement that the permit would be used during the initial year in which it was granted.
Gulfstream fully complied with the provisional order by filing a supplement to its application with the Division on September *265 24, 1980. It stated that: (1) the desired period of racing would be between July 1st and December 1st; (2) racing would commence on or after July 1, 1982; and (3) the permit was intended for use during the initial year in which dates are granted under such permit. Without further hearing, a final order was entered by the Division on October 24, 1980 denying the application on the ground that Gulfstream had applied prematurely for the permit insofar as it was not intended for use within one year from the date of issuance.
Because Gulfstream complied with all the statutory criteria required by Sections 550.02 and 550.33, Florida Statutes (1979), it was entitled to the issuance of a permit. § 550.02(6), Fla. Stat. (1979); State ex rel. Palm Beach Jockey Club v. Florida State Racing Commission, 158 Fla. 335, 28 So.2d 330 (1946); State ex rel. Kinsella v. Florida State Racing Commission, 155 Fla. 387, 20 So.2d 258 (1945).
While the Division concedes that when all of the statutory criteria have been met, a permit must be granted, they contend that the failure to specifically indicate the "desired period" of racing, prevents compliance with the statutory requirements. Ultimately, they argue that the permit must be used within one year of issuance. We do not agree.
First, we find that Gulfstream clearly indicated the time period in which the proposed racing would occur. In the supplement to their application, Gulfstream stated that the desired period of racing was between July 1, and December 1, and that racing would commence on or after July 1, 1982. When considered in its entirety, these statements clearly indicated the desired period of racing.
Secondly, the cited statutes do not support the conclusion that the permit must be used within one year. The Division recites several policy reasons why a permit must be used within the specified time limitation. While administrative agencies are entitled to some leeway in formulating policy through agency orders, McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977), the latitude allowable does not permit an agency to, in effect, adopt a rule without complying with the statutory requirement. In Department of Revenue v. U.S. Sugar Corporation, 388 So.2d 596 (Fla. 1st DCA 1980), the court stated:
The Department, ... has placed upon the statute an interpretation that is not readily apparent from a reading of the statute, but impacts upon the taxpayer with the consistent effect of law. We agree with the hearing officer's conclusion that the statement is one of general applicability that implements, interprets or prescribes law, policy, procedure or practice requirements of the agency and falls squarely within the definition of a rule as defined by § 120.52(14), Florida Statutes (1977). [citations omitted]
388 So.2d at 598. Similarly, in the present case, the Division required a statement by Gulfstream that the permit would be used during the initial year in which it was granted, a requirement which was not readily apparent from the statute. Since the Division attempted to state a rule of general applicability without the statutory rulemaking procedures, it shall not be given effect. General Development Corp. v. Division of State Planning, Department of Administration, 353 So.2d 1199 (Fla. 1st DCA 1978).
Following the denial of Gulfstream's permit, the Division then promulgated Florida Administrative Code 7 E-5.121, which required a statement that the quarterhorse racing permit would be used within one year of issuance. The rule will not support the denial of Gulfstream's application because administrative rules will not be applied retroactively. York v. State ex rel. Schwaid, 152 Fla. 285, 10 So.2d 813 (1943); Sexton Cove Estates, Inc. v. State Pollution Control Board, 325 So.2d 468 (Fla. 1st DCA 1976).
After the date of the final agency order denying Gulfstream's application (October 24, 1980), the 1981 Legislature amended Section 550.33(1), Florida Statutes (1980 *266 Supp.), by Ch. 81-154 § 1, Laws of Florida, effective July 1, 1981, to read:
Subject to all the applicable provisions of this chapter, any person possessing the qualifications prescribed in this chapter may apply to the Division of Pari-mutuel Wagering for a permit to conduct quarter horse racing meetings and racing under this chapter. The applicant must demonstrate (a) that the location or locations where the permit will be used is available for such use; and (b) financial ability to satisfy the reasonably anticipated operational expenses of the first racing year following final issuance of the permit. If the racing facility is already built, the application must contain a statement, with reasonably supporting evidence, that the permit will be used for quarter horse racing within 1 year of the date on which it is granted; if not already built, the application must contain a statement, with reasonably supporting evidence, that substantial construction will be started within 1 year of the issuance of the permit... . [emphasis supplied]
Thus, Chapter 81-154 now supports Rule 7 E-5.121, supra. Nonetheless, we find, absent a clear legislative intent to the contrary, a law is presumed to operate prospectively. Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239, 241 (Fla. 1977) and cases cited therein. We find nothing in Chapter 81-154 evincing a legislative intent to make it retroactive. Gulfstream filed its request for a permit and was denied long before the Legislature supplied the Division with the authority to require that a permit for quarterhorse racing be used within one year from the date of issuance.[2] Consequently, Chapter 81-154 is not applicable to the present case. Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695, 700 (Fla. 1978).
For the foregoing reasons, the order appealed from is reversed with directions for the Division of Pari-Mutuel Wagering to grant Gulfstream Racing Association, Inc.'s application for a quarterhorse racing permit without a requirement that it be used within one year from the date of its issuance.
Reversed and remanded with directions.
NOTES
[1] Quarterhorse racing has occurred on harness tracks which obtained alternative authority within their otherwise allotted time.
[2] The rule relied upon by the Division, emanating from Davidson v. City of Coral Gables, 119 So.2d 704 (Fla. 3d DCA 1960), that a change in the statute after the institution of an action but before the entry of final decree is controlling, has no application to be present controversy.